PEOPLE v DEAN

Docket No. 45423. Submitted June 3, 1980, at Grand Rapids.—Decided January 21, 1981.

Raymond L. Dean was convicted of second-degree murder and possession of a firearm in the commission of a felony, Recorder's Court of Detroit, George T. Ryan, J. Defendant appeals, alleging that the trial judge erred by conducting an inquiry of the jury regarding certain comments made by bystanders which the jurors were thought to have heard, that the prosecutor erred by referring during voir dire and opening arguments to the fact that the defendant intended to present an alibi defense, that a photographic showup was unfairly suggestive because of the arrangement and alignment of the photographs, and that defense counsel was ineffective because counsel failed to establish whether the credibility of one of the identifying witnesses was questionable. *Held:*

1. The trial judge did not abuse his discretion by asking the

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 999, 1010.

Stranger's communication with jury in federal criminal case as prejudicial. 1 L Ed 2d 1849.

[2, 3] 21 Am Jur 2d, Criminal Law § 137.

75 Am Jur 2d, Trial § 247.

Validity and construction of statute requiring defendant in criminal case to disclose matter as to alibi defense. 45 ALR3d 958.

Construction and application of Rule 12.1, Federal Rules of Criminal Procedure, requiring, upon written notice, exchange of names of witnesses to be used to establish or rebut defendant's alibi. 42 ALR Fed 878.

[4, 5] 21 Am Jur 2d, Criminal Law §§ 314.5, 368.

29 Am Jur 2d, Evidence §§ 371, 371.4.

Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedures. 39 ALR 3d 487.

Validity, under Federal Constitution, of police lineup or showup procedures — Supreme Court cases. 34 L Ed 2d 839.

[5] 21 Am Jur 2d, Criminal Law § 369.

29 Am Jur 2d, Evidence § 371.8.

Admissibility of evidence of photographic identification as affected by suggestive identification procedures. 39 ALR3d 1000.

jury what they had heard and whether it would prejudice their view of the defendant's guilt or innocence and by cautioning the jury to disregard the comments. The judge was not required to question each juror individually.

2. Reference by the prosecutor to the defendant's alibi defense before the defendant actually elected to proceed with that defense was improper. However, in this case reversal is not required because the defendant was not prejudiced. The defendant did not object, and did present witnesses to support his alibi defense.

3. The photographic display, in which the defendant's photograph was taken with a different camera alignment than the other photographs, was not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

4. Defense counsel properly cross-examined the identifying witness with regard to whether he was affected by drugs at the time of identification and with regard to the witness's possible violation of probation. There was no error.

Affirmed.

1. CRIMINAL LAW — JURY — REMARKS BY BYSTANDERS — PREJUDICE.

Error sufficient to warrant reversal will not be presumed merely because a juror is exposed to prejudicial remarks made by a stranger or bystander; the error must appear affirmatively and prejudice must be shown or facts clearly establishing the inference that prejudice occurred from what was said or done.

2. CRIMINAL LAW — ALIBI — PROSECUTOR'S COMMENTS.

A defendant is not required to proceed with an alibi defense after giving notice of an intent to do so and it is reversible error for the trial court and the prosecutor to comment on the defendant's failure to produce an alibi witness.

3. CRIMINAL LAW — ALIBI — PROSECUTOR'S COMMENTS.

A prosecutor's reference to a defendant's filing of a notice of alibi, prior to the defendant's actually putting forth an alibi defense, is an improper comment on the defendant's right to remain silent; such comments do not require reversal of a defendant's conviction, however, where the defendant was not prejudiced by the comments.

4. CRIMINAL LAW — IDENTIFICATION — LINEUPS.

The burden is on a defendant to prove that a lineup was impermissively suggestive where counsel was present at the lineup.

5. CRIMINAL LAW — IDENTIFICATION — PHOTOGRAPHIC IDENTIFICATION
   — TOTALITY OF CIRCUMSTANCES.

   A court must consider the totality of the circumstances when
   determining whether an identification procedure was impermis-
   sively suggestive; in the case of a photographic identification,
   the test is the degree of suggestion inherent in the manner in
   which the suspect's photograph was presented to the witness
   for identification.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Prin-
cipal Attorney, Appeals, and *Anne B. Wetherholt,*
Assistant Prosecuting Attorney, for the people.

*Ruby & Ruby, P.C.,* for defendant on appeal.

Before: R. B. BURNS, P.J., and MACKENZIE and
J. T. KALLMAN,* JJ.

MACKENZIE, J. On October 16, 1978, defendant
was convicted as charged of second-degree murder,
MCL 750.317; MSA 28.549, and possession of a
firearm in the commission of a felony, MCL
750.227b; MSA 28.424(2). Defendant was sentenced
to consecutive prison terms of two years for the
felony-firearm conviction and life for the second-
degree murder conviction. He appeals as of right.

The first issue is whether the trial judge com-
mitted reversible error in conducting an inquiry of
the jury regarding certain comments which were
made in their presence outside of the courtroom
and in failing to grant defendant's motion for
mistrial based on those comments. The record
indicates that during defendant's trial defense
counsel alerted the trial judge that certain rela-
tives or friends of the victim had shouted at the
defendant in the hallway "You're the murderer".

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Defense counsel also stated that he thought there were jurors in the hallway but did not indicate which jurors were present. After cautioning the persons who had made the statements, the trial judge ordered the jury brought back in, whereupon the following colloquy occurred:

"THE COURT: Ladies and gentlemen, it has come to the Court's attention that there were young people out in the hallway during the break and just prior to the Court resuming the session now, and they were making some comments concerning the case. I want to know if any of you ever heard any of the comments at all. If so, just raise your hand.

"What is your name?

"MS. GREEN: Beverly Green.

"THE COURT: What is it you actually heard, Ma'am?

"MS. GREEN: Calling the defendant 'murderer, murderer.'

"THE COURT: Did you hear anything else?

"MS. GREEN: I heard the defendant say to shut her mouth up or he'd slap her face.

"THE COURT: The fact you heard this would affect your ability to sit on this case? And now, be perfectly candid.

"MS. GREEN: No.

"THE COURT: All right. Anyone else hear anything at all?

"Do you understand these are what we call 'extrajudicial comments' that have no bearing upon the guilt or innocence of the defendant, and that you have to exclude this completely from your mind in order to fairly get the verdict? Understand?

"MR. PANARETOS *[Defense attorney]:* May I ask if there are any other places in the building where comments of this type have been heard?

"THE COURT: Any one of you heard anything else in any other places? Nothing at all? Fine."

Subsequently, the trial judge denied defendant's

motion for a mistrial, stating that he was satisfied that the jurors were not prejudiced by whatever they had heard.

It is well established that reversible error will not be presumed merely because a juror is exposed to prejudicial remarks made by a stranger or bystander. *People v Nick,* 360 Mich 219; 103 NW2d 435 (1960). There, the Court emphasized that error must appear affirmatively and "[p]rejudice must be shown, or facts clearly establishing the inference that it occurred from what was said or done. A mere possibility is not sufficient." *Nick, supra,* 227. See also *People v Schram,* 378 Mich 145; 142 NW2d 662 (1966).

In the case at bar, we do not believe that the trial judge abused his discretion in questioning the jury regarding what they might have heard. Defendant has not cited any authority, nor have we found any, supporting his contention that the trial judge should have questioned each juror individually. The trial judge's conduct in asking the jurors what they had heard, whether that would prejudice their view of defendant's guilt or innocence, and his cautionary instruction to ignore any such comments were within his discretion in dealing with the problem. In the absence of any showing of prejudice, we find no reversible error.

Defendant next argues that the prosecutor's remarks during the jury voir dire and opening arguments that defendant had filed a notice of alibi and intended to present an alibi defense impermissibly shifted the burden of proof to defendant and constituted improper comment on his right to remain silent. We note that defense counsel did not object to these remarks and that defendant did produce witnesses supporting his alibi defense.

In *People v Shannon,* 88 Mich App 138; 276 NW2d 546 (1979), this Court held that a defendant is not required to proceed with an alibi defense after giving notice of an intent to do so and it is reversible error for the trial court and the prosecutor to comment on defendant's failure to produce an alibi witness. In *Shannon,* over defendant's objection, the court instructed the jury that defendant would not be presenting an alibi defense. The prosecutor further referred to the nonproduction of the alibi witness in his closing argument, stating that the testimony of the people's witnesses was uncontroverted and unchallenged by defendant's alibi witness. In *Shannon,* the Court stated that:

"Informing the jury of defendant's failure to produce an alibi witness where he had previously given notice unduly denigrates defendant's case when he later chooses to present no evidence. At issue is the jury's ability to draw an impermissible inference of guilt from defendant's decision not to call an alibi witness and its relation to his involvement in the charged crime. A jury is left with the impression that by defendant's unsuccessful attempt to follow through with his alibi, guilt is rendered more presumable and apparent."

*Shannon, supra,* 143. Continuing, the Court reasoned that the failure to produce an alibi witness is not necessarily inconsistent with a defendant's innocence, but that the court, as well as the prosecutor, should refrain from commenting on the failure to produce such a witness.

"It is axiomatic that defendant's failure to testify may not be commented upon by court or prosecutor. MCL 600.2159; MSA 27A.2159, *People v Hider,* 12 Mich App 526, 529-530; 163 NW2d 273 (1968), *People v Jor-*

*dan,* 7 Mich App 28, 30; 151 NW2d 242 (1967). Defendant is under no duty [to] take the stand or proffer evidence, but rather may remain silent protected by the presumption of innocence. This continuing presumption of innocence serves as the basis for the requirement that the state has a never-shifting burden to prove guilt beyond a reasonable doubt. The lower court's instruction to the jury in effect restricted this presumption by allowing the jury to make adverse inferences from the alibi witness's failure to testify. If no adverse inference can be drawn from defendant's election, we see no reason to permit it in cases where he further elects not to better defend himself, here, through an alibi witness.

"Further, there is no useful purpose served by informing the jury of defendant's original intention to produce an alibi and his subsequent decision not to call a supporting witness. The notice of alibi requirement was provided for the benefit and protection of the public. *People v Merritt,* 396 Mich 67, 77; 238 NW2d 31 (1976), *People v McFadden,* 347 Mich 357, 363; 79 NW2d 869 (1956). Its purpose is to enable the prosecution to investigate the merits of such a defense prior to trial, *Merritt, supra,* and not to alert the jury of the defendant's proposed defense." *Shannon, supra,* 143-144. (Footnote omitted.)

Similarly, in *People v Hunter,* 95 Mich App 734; 291 NW2d 186 (1980), the Court found the prosecutor's closing argument referring to defendant's failure to produce witnesses listed on his notice of alibi prejudicial even though defendant himself had testified to an alibi defense.

"We conclude that any reference made to the filing of a notice of alibi prior to the defendant's actually putting forth an alibi defense constitutes an impermissible comment on the defendant's right to remain silent. To find otherwise would elevate the procedural requirement of filing the notice of alibi into a waiver of defendant's substantive right to remain silent." *Hunter, supra,* 738-739.

Although we disapprove of any mention by the prosecution of the filing of notice of an alibi defense before defendant actually elects to proceed with such a defense, we do not feel reversal is required in the case at bar. The prosecutor herein was not commenting on defendant's failure to produce some or all of the witnesses listed on his notice of alibi, but only attempting to discover if the jury could still bring in a verdict of guilty when faced with conflicting evidence. Defendant's failure to object and the fact that he did present witnesses supporting his alibi defense lead us to conclude that he was not prejudiced by the prosecutor's statement.

Finally, defendant contends that the photographic show-up was unfairly suggestive because the photographs of the other five persons used in the identification procedure were taken from a horizontal angle while the picture of defendant was taken from a vertical angle. Prior to trial, a *Wade*[1] hearing was conducted to determine the propriety and suggestiveness of a photographic show-up which was conducted on July 28, 1978, before defendant was in custody. Detroit Police Officer Milfordean Luster testified that she was the officer in charge of the case who conducted the photographic identification. She testified that six photographs were arranged on a desk and shown to three witnesses in the presence of an attorney. Officer Luster testified that the photographs depicted the heads and torsos of white males in the age group of 25 to 35, and that defendant is a 29-year-old white male. Officer Luster testified that of the three witnesses, Robert Mazzola was able to make a positive identification of defendant as the

[1] *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

person who shot the victim. One of the other witnesses, Cynthia Montgomery, looking at defendant's photograph, stated that "[t]he body looks like him, the mouth, but I'm not going to say, because of his hair. Did he get his hair cut?" Officer Luster testified that defendant's photograph could be distinguished from the fact that it was vertical, but that it did not stand out from the others in the way she had the photographs arranged. She also testified that she did not suggest to anyone which photograph to choose and that the show-up attorney had no objection to the way the procedure was conducted. Following the officer's testimony, the trial judge remarked that he had viewed the photographs and did not find them unduly suggestive.

In *People v Morton,* 77 Mich App 240, 244; 258 NW2d 193 (1977), this Court stated as follows:

"In the instant case, counsel was present during the lineup. When counsel is present at a lineup, the burden is on the defendant to prove the lineup was impermissibly suggestive. *People v Rivera,* 61 Mich App 427, 431; 232 NW2d 727 (1975), *People v Blassingame,* 59 Mich App 327; 229 NW2d 438 (1975), *People v Curtis,* 34 Mich App 616; 192 NW2d 10 (1971), *People v Young,* 21 Mich App 684; 176 NW2d 420 (1970). In measuring this burden, *Rivera* indicates a court must consider the totality of the circumstances and determine whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *People v Rivera, supra,* at 429-430, fn 2."

When considering the totality of the circumstances, "[t]he test is the degree of suggestion inherent in the manner in which the suspect's photograph is presented to the witness for identification". *People v Lee,* 391 Mich 618, 626; 218

NW2d 655 (1974). We do not find that the mere fact that defendant's photograph was taken from a vertical angle was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

In further attacking the photo show-up, defendant argues that his trial counsel was ineffective because he did not establish whether or not Mr. Mazzola was affected by drugs at the time of identification, the hearing in general was "shallow", and counsel did not establish that Mazzola might have lied because he was a parolee. There was evidence that Mazzola was at a party at which marijuana and another drug, PCP, were being used immediately prior to the shooting. At trial, Mazzola stated that he was "a little high". However, there is absolutely no evidence that Mazzola was affected by drugs at the time of the identification procedure. Defense counsel cross-examined the witness as to the extent that his use of drugs might have discredited his identification. Defendant's attorney also established, through cross-examination of the witness, that Mazzola had been told by the police that he might have violated his probation. The witness also stated, however, that the police did not attempt to influence the content of his testimony. We find no error.

Affirmed.