PEOPLE v HOLLAND

Docket No. 102590. Submitted March 14, 1989, at Grand Rapids. Decided August 8, 1989. Leave to appeal applied.

Marlon Romel Holland was convicted by a jury in the Calhoun Circuit Court of second-degree murder and possession of a firearm during the commission of a felony. The trial court, James C. Kingsley, J., sentenced defendant to imprisonment of sixty to ninety years on the murder conviction, to be served consecutive to the mandatory two-year term for felony-firearm. Defendant appealed, raising several claims.

The Court of Appeals *held*:

1. The trial court did not err in granting the prosecution's request that the notice of alibi filed by defense counsel be read to the jury. Generally, the prosecution and the trial court may not comment on a defendant's filing of a notice of alibi or his failure to produce the witnesses listed therein prior to the defendant's actual presentation of an alibi defense. Here, however, defendant presented an alibi defense through his own testimony and that of a witness he presented. Thus, the prosecution was free to comment on defendant's failure to produce two alibi witnesses listed in the notice. Error, if any, committed by the trial court in allowing the introduction of the notice by reading it to the jury, as opposed to allowing introduction through cross-examination of defendant, was harmless in view of the overwhelming evidence of defendant's guilt.

2. The trial court did not err in allowing the prosecution to present in rebuttal a witness who was listed in the notice of alibi but not presented by defendant. This witness was properly presented to rebut defendant's alibi and she could not have been presented in the prosecution's case in chief in advance of the alibi defense.

3. The 193-day delay in defendant's trial did not deny defendant of his right to a speedy trial.

4. The trial court did not abuse its discretion when it sen-

REFERENCES

Am Jur 2d, Appeal and Error §§ 931, 938; Criminal Law §§ 192 *et seq.*, 542, 580 *et seq.*, 859-864; Evidence §§ 250, 269, 440; Trial §§ 94, 95, 193.

See the Index to Annotations under Alibi; Rebuttal; Sentence and Punishment; Speedy Trial.

tenced defendant on the murder conviction. The entire interval between the defendant's minimum sentence and his maximum sentence is not certain to occur after his death and therefore it does not violate the requirements of *People v Moore,* 432 Mich 311 (1989).

Affirmed.

MURPHY, J., concurred in part and dissented in part. He agreed with the result reached by the majority, opining that the evidence of defendant's guilt was overwhelming and any error worked by the trial court's reading of the notice of alibi was harmless. However, it is Judge MURPHY's view that a defendant's notice of alibi should rarely, if ever, be read to the jury in light of the potential for considerable prejudice to the defendant and improper shifting of the burden of proof. Additionally, Judge MURPHY would remand for a resentencing consistent with the requirements of *People v Moore.*

1. CRIMINAL LAW — ALIBI — NOTICE OF ALIBI — PROSECUTORIAL COMMENT.

The prosecution and the trial court may not comment on a defendant's filing of a notice of alibi or his failure to produce witnesses listed therein prior to the defendant's actual presentation of an alibi defense; however once an alibi is presented, the prosecution may attack the alibi by commenting on the nonproduction of listed witnesses or the weakness of the testimony presented in support of the alibi.

2. CRIMINAL LAW — ALIBI.

An alibi defense is that which places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party.

3. EVIDENCE — REBUTTAL.

Rebuttal testimony is that used to contradict, repel, explain, or disprove evidence produced by the other party, tending directly to weaken or impeach the same.

4. CRIMINAL LAW — EVIDENCE — REBUTTAL.

Rebuttal evidence is improper where such evidence should have been introduced in the case in chief.

5. CRIMINAL LAW — EVIDENCE — REBUTTAL.

Rebuttal evidence must be on a material matter, not a collateral issue.

6. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Eᴠɪᴅᴇɴᴄᴇ — Rᴇʙᴜᴛᴛᴀʟ.

The prosecution may not elicit a denial from the defendant on cross-examination only to inject a new issue on rebuttal or revive the right to introduce evidence which should have been introduced in the case in chief.

7. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Sᴘᴇᴇᴅʏ Tʀɪᴀʟ.

The factors to be balanced in determining whether a defendant's right to a speedy trial has been violated are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant.

8. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Sᴇɴᴛᴇɴᴄɪɴɢ — Aᴘᴘᴇᴀʟ.

A criminal defendant may request review of the exercise of a trial court's discretion in imposing sentence, but relief will be granted only where it is found that the trial court abused its discretion to the extent that the sentence shocks the conscience of the appellate court.

9. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Sᴇɴᴛᴇɴᴄɪɴɢ — Aᴘᴘᴇᴀʟ.

A sentence imposed for a term of years must be an indeterminate sentence less than life that is reasonably possible for a defendant to serve.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Conrad J. Sindt,* Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan J. Smith*), and Marlon Holland, in propria persona.

Before: Wᴇᴀᴠᴇʀ, P.J., and Mᴜʀᴘʜʏ and Gʀɪꜰꜰɪɴ, JJ.

Gʀɪꜰꜰɪɴ, J. Defendant appeals as of right from his conviction by a jury of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced to sixty to ninety years for the murder conviction, to be served consecutive to the mandatory two-year sentence on the felony-firearm conviction. We affirm.

I

Defendant's conviction stemmed from the shooting death of Byron Qualls, a reputed pimp and drug dealer, who was shot in the chest and buttocks at close range with a shotgun. Qualls' body was found by highway workers in a ditch along Interstate 94, near the Michigan-Indiana border, covered by a sleeping bag and a piece of carpet. Although Qualls was known to wear a lot of jewelry, none was found on his body.

The evidence adduced at trial of defendant's guilt for the killing was overwhelming. Defendant's uncle, Antonio Halsey, testified at trial that defendant arrived in Chicago on July 17, 1986, driving Qualls' 1982 Cadillac automobile. Defendant told Halsey that he had shot someone in Battle Creek. He described the wounds and how he put the victim in the trunk of the Cadillac wrapped in a carpet. According to the defendant, the victim was still alive when he was placed in the trunk; however, the victim's pounding and screaming from inside the trunk grew fainter as the defendant drove along I-94. Defendant admitted to Halsey that he buried the victim's body in Indiana.

The carpet and sleeping bag found covering the victim's body were identified as coming from the defendant's Battle Creek apartment. A number of shotgun pellets and a piece of gold-ring chain were found embedded in the living room wall of the apartment. Blood stains were found on the living room paneling and on the wall near the stairway. Blood spots were also found in the trunk of the Cadillac. All of the identified blood matched the victim's blood type (type O).

Odell Miller (former friend of the defendant) and Alice Humphries (former girl friend of the defen-

dant) also resided in the Battle Creek apartment in which the shooting occurred. At trial, Miller testified that he arrived at the apartment sometime after 8:00 P.M. on July 15, 1986. At that time, he observed the defendant and another man in the apartment. The unidentified man who had been shot was mumbling and lying in a pool of blood.

Defendant was apprehended in Chicago two months after the shooting. During his arrest, defendant threw away a black onyx ring which was later identified as belonging to the victim. A shotgun determined to be the murder weapon was found in defendant's possession. Qualls' Cadillac automobile was ultimately located on the west side of Chicago.

At trial, the defendant took the stand in his own defense. During his testimony, defendant denied shooting Qualls and presented an alibi defense. In particular, the defendant stated that, on the night of the killing, he was not in Battle Creek but was enroute to Chicago. According to the defendant, he could not have shot Qualls because at the time of the incident he was a passenger in a brown Chevrolet Nova in the company of another uncle, *Darwin* Halsey, along with Darwin's girl friend. Although defendant claimed to have forgotten the girl friend's name, it is undisputed that Doris Diane Holmes is Darwin Halsey's girl friend and that Darwin and Ms. Holmes drive a gold Nova automobile.

In addition to his own testimony, the defendant also presented the testimony of his former girl friend Alice Humphries, who stated that the defendant was not present in the apartment when she heard gunshots. Further, Ms. Humphries testified that after the shots were heard, she observed Odell Miller with a gun in his hand.

Prior to trial, the defendant filed with the court

a notice of alibi which gave the prosecution notice of the defendant's intention to assert an alibi defense. The alibi notice listed as "the names of witnesses known to the defendant to be called to establish such defense":

> Darwin Halsey, 1424 South St. Louis, Chicago, Illinois, first floor apartment, [and] Diane Holmes, 1424 South St. Louis, Chicago, Illinois, basement apartment.

Further, the notice of alibi asserts the following as the defendant's whereabouts at the time of the shooting:

> The defendant claims he was between Kellogg Regional Airport, Battle Creek, Michigan, and 1424 South St. Louis, Chicago, Illinois, between 8:25 P.M. and 2 A.M. on the 15th and 16th days of July, 1986.

After the defense rested, the prosecution called Doris Diane Holmes as a rebuttal witness and successfully persuaded the lower court to read to the jury the defendant's notice of alibi.

## II

Defendant raises four issues on appeal. First, he argues that, because he did not present an alibi at trial, the lower court erred so as to require reversal in reading to the jury his notice of alibi and allowing the prosecutor to comment in closing argument as to the failure of the defendant to call alibi witnesses Darwin Halsey and Doris Diane Holmes. We would agree with the defendant if an alibi had not been presented at trial by the defense. Here, however, the defendant's trial testimony was consistent with his notice of alibi that

he was not present in the apartment at the time of the shooting. His testimony that he was between Battle Creek and Chicago with his Uncle Darwin Halsey and his uncle's girl friend is an alibi. His absence from the apartment at the time of the shooting was corroborated by defense witness Alice Humphries.

As a general rule, where a defendant effectively withdraws his notice of alibi by failing to present any evidence on the defense, it is improper for the prosecution or the trial judge to comment on the defendant's original intention to present an alibi. *People v Shannon,* 88 Mich App 138; 276 NW2d 546 (1979). Such comment is tantamount to shifting the burden of proof by allowing the jury to make adverse inferences from defendant's or the alibi witness's failure to testify:

> Informing the jury of defendant's failure to produce an alibi witness where he had previously given notice unduly denigrates defendant's case when he later chooses to present no evidence. At issue is the jury's ability to draw an impermissible inference of guilt from defendant's decision not to call an alibi witness and its relation to his involvement in the charged crime. A jury is left with the impression that by defendant's unsuccessful attempt to follow through with his alibi, guilt is rendered more presumable and apparent. [*Shannon, supra* at 143.]

However, it is well settled that the prosecution may comment on the filing of a notice of alibi by a defendant and upon defendant's failure to produce corroborating witnesses after defendant has actually put forth an alibi defense. *Shannon, supra; People v Hunter,* 95 Mich App 734, 738-739; 291 NW2d 186 (1980); *People v Dean,* 103 Mich App 1; 302 NW2d 317 (1981). As stated by this Court in *Shannon, supra* at 145:

Where a defendant testifies to an alibi and calls no additional witnesses to support it, the prosecution, by commenting on the nonproduction of corroborating alibi witnesses, is merely pointing out the weakness in defendant's case.

In *Shannon,* the defendant did not testify, nor did he present an alibi defense, therefore comment thereon by the prosecutor was held to be an impermissible shifting of the burden of proof. In *Hunter,* defendant testified, but did not offer an alibi prior to the prosecutor's reference to the notice of alibi. Under those facts, this Court held that any reference to the defendant's filing of a notice of alibi prior to the defendant's actually presenting the defense would "elevate the procedural requirement of filing the notice of alibi into a waiver of defendant's substantial right to remain silent."

Thus, the status of the law is that, prior to defendant's actually presenting an alibi at trial, the prosecution and trial court may not comment on defendant's filing of an alibi notice or failure to produce corroborating witnesses. However, once the defendant presents such a defense, the prosecution is permitted to attack the alibi by commenting on the weakness of the alibi testimony. *Shannon, supra; Hunter, supra.* Moreover, where the defendant presents an alibi defense at trial, the prosecutor's questions and arguments regarding the defendant's failure to produce the alibi witnesses listed in the notice of alibi is permissible to highlight the weakness of the defense. As we stated in *People v Khabar,* 126 Mich App 138, 142; 337 NW2d 9 (1983):

Defendant also challenges the prosecutor's closing comments on defendant's failure to produce the testimony of an alibi witness listed in his notice of alibi. The remarks—which merely consti-

tuted comment on the weakness of defendant's case—were not impermissible. *People v Shannon,* 88 Mich App 138, 145; 276 NW2d 546 (1979).

In the instant case, defendant asserts that it was error for the court to read to the jury the notice of alibi, which listed Doris Diane Holmes and Darwin Halsey as alibi witnesses, and to allow the prosecutor to comment as to their nonproduction. In accordance with the authority cited above, the actions of the prosecutor and the trial court would be error only if the defendant had not presented the alibi defense.

An alibi is "[a] defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." Black's Law Dictionary (5th ed), p 66. An alibi witness is a person whose testimony places defendant elsewhere than at the scene of the crime. *People v Hooks,* 139 Mich App 92, 98; 360 NW2d 191 (1984).

In the instant case, defendant took the stand and testified that at the time of the crime he was in transit between Battle Creek and Chicago. Additionally, Alice Humphries testified on direct examination by defense counsel that she was at the scene shortly after Qualls was shot and that defendant was not.

It was not until *after* the above-mentioned testimony that the prosecution introduced evidence of the defendant's notice of alibi and the witnesses listed therein. Since defendant had raised the alibi, such actions were proper rebuttal to highlight the weakness of defendant's defense. The adversarial challenge to the asserted defense did not impermissibly shift the burden of proof. *Khabar, supra.*

If error was committed by the reading of the alibi notice to the jury rather than cross-examining the defendant as to its contents,[1] we hold that such an error was harmless in view of the overwhelming evidence of guilt. MCL 769.26; MSA 28.1096[2] and MCR 2.613(A).[3]

III

Next, the defendant argues that the trial court erred by allowing the prosecution to introduce Doris Holmes as a rebuttal witness. We disagree.

Rebuttal testimony is that used to contradict, repel, explain, or disprove evidence produced by the other party, tending directly to weaken or impeach the same. *People v Kelly,* 423 Mich 261, 281; 378 NW2d 365 (1985). There are, however, limitations. First, if the evidence should have been introduced in the case in chief, rebuttal is improper. *People v Losey,* 413 Mich 346, 351; 320 NW2d 49 (1982). Second, rebuttal evidence must be on a material matter, not a collateral issue. *People v Teague,* 411 Mich 562, 566; 309 NW2d 530

[1] It is noteworthy that the notice of alibi was read to the jury only after the defendant refused to be recalled to the stand for rebuttal purposes.

[2] MCL 769.26; MSA 28.1096:

No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

[3] MCR 2.613(A):

Harmless Error. An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

(1981). Third, if the evidence was not raised in the prosecutor's case in chief, the defense must have raised a new issue. The prosecutor is not allowed to elicit a denial from the defendant on cross-examination only to inject a new issue on rebuttal or revive the right to introduce evidence that should have been introduced in the case in chief. *People v Bennett,* 393 Mich 445, 449-450; 224 NW2d 840 (1975).

The testimony of Doris Holmes was offered to rebut defendant's testimony that at the time of the murder Darwin Halsey and Darwin's girl friend were transporting him in a brown Nova from Battle Creek to Chicago. This testimony could not have been introduced in the prosecution's case in chief since it was relevant only in response to the defendant's assertion of the alibi. Holmes was properly called in rebuttal to contradict defendant's testimony. Holmes was listed by the defense as a witness in support of defendant's alibi. When she was not called by defendant, the prosecutor properly called her to refute the alibi. Although the defendant claimed on cross-examination to have forgotten the name of his uncle's girl friend, it is undisputed that Doris Holmes was Darwin's girl friend and thus the person to whom the defendant was referring. The defendant's convenient memory loss and self-serving statement that he *didn't think* the name of his uncle's girl friend was Doris Holmes should not preclude the prosecution from rebutting the obvious.

IV

As his third issue, defendant argues that he was denied his Sixth Amendment right to a speedy trial. We disagree.

In reviewing speedy trial claims, Michigan has

adopted the federal rule as stated in *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). The factors to be balanced in determining whether a defendant's right to a speedy trial has been violated are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *People v Hill,* 402 Mich 272, 283; 262 NW2d 641 (1978).

1. *Length of delay.* While a delay of six months is necessary to trigger further investigation, after eighteen months prejudice is presumed and the burden shifts to the prosecution to prove that defendant has not been prejudiced. *People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948); *People v Lowenstein,* 118 Mich App 475, 487; 325 NW2d 462 (1982), lv den 414 Mich 947 (1982). The delay in the instant case was 193 days; prejudice is therefore not presumed.

2. *Reason for delay.* In order to constitute a violation of a defendant's right to a speedy trial, the delay must be unreasonable. *People v Collins,* 388 Mich 680, 687; 202 NW2d 769 (1972); *People v Martin,* 147 Mich App 297, 303; 382 NW2d 726 (1985). We are not persuaded that the delay in bringing defendant to trial in the instant case was unreasonable. Defendant's trial was originally scheduled to commence on May 5, 1987, within 180 days of defendant's arrest, but was adjourned by the court until a date certain of May 19, 1987. Even though scheduling delays are attributable to the prosecution, such delays are to be given minimal weight. *People v Ewing,* 101 Mich App 51, 55; 301 NW2d 8 (1980). The delay in bringing the instant defendant to trial was slight and given the fact that the prosecution was required to secure many out-of-state witnesses, we do not find the delay to be unreasonable.

*3. Assertion of right.* Defendant did assert his right to a speedy trial by filing a demand for a speedy trial and by moving for release from jail. *Lowenstein, supra* at 489.

*4. Prejudice to defendant.* Lower courts recognize two types of prejudice arising from pretrial delay: (1) prejudice to the defendant's person in the form of incarceration or anxiety over the pending charges; and (2) prejudice to the defense from loss of evidence or witnesses. *People v Chism,* 390 Mich 104, 114; 211 NW2d 193 (1973); *Collins, supra* at 694. While defendant can be presumed to have suffered some anxiety and stress while awaiting the outcome of his case, *People v Harris,* 110 Mich App 636, 647; 313 NW2d 354 (1981), greater specificity and harm must be shown where the other factors weigh in the state's favor. *Lowenstein, supra* at 490. Defendant has failed to show any prejudice whatsoever from this delay, other than aggravation and mental stress. Given that the delay was minimal, we do not weigh this factor heavily in defendant's favor.

Balancing these four factors, we conclude that defendant's right to a speedy trial has not been violated. The delay was slight and was partially the result of defendant's own actions in fleeing to another jurisdiction.

V

Finally, defendant argues that the trial judge abused his discretion by sentencing defendant to a prison term in excess of his life expectancy. We disagree.

Appellate review is limited to whether the sentencing court abused its discretion to the extent that the sentence shocks the judicial conscience of the appellate court. *People v Coles,* 417 Mich 523,

550; 339 NW2d 440 (1983). To be shocking to the judicial conscience, a sentence must far exceed what a reasonable person would perceive to be an appropriate response to the crime and the criminal. *Id.,* at 542-543.

Unlike the sentences of one hundred to two hundred years in *People v Moore,* 432 Mich 311; 439 NW2d 684 (1989), the instant sentence of sixty to ninety years for this twenty-three-year-old defendant is not necessarily beyond the defendant's life. The entire interval between the defendant's minimum sentence and his maximum sentence is not certain to occur after his death. *Moore, supra* at 321. The judges of this Court are not and should not be actuaries. *Id.,* at 329. We, however, do take judicial notice that, with ever increasing life expectancies, many citizens of our state live to the age of eighty-three and beyond. In addition, although defendant claims he will never live to the age of eighty-three or eighty-five, it is noteworthy that three justices of the United States Supreme Court are in their eighties. Defendant's argument that it will be impossible during his lifetime to serve his term-of-years sentence is based upon speculation and statistical averages which may not apply to him.

We find the sentence to be an appropriate social response to the crime and the criminal.

Affirmed.

WEAVER, P.J., concurred.

MURPHY, J. *(concurring in part and dissenting in part).* I concur in the result reached by the majority because the evidence of defendant's guilt is overwhelming and any error worked by the lower court's reading of the notice of alibi was harmless. I write separately, however, to express my view

that a defendant's notice of alibi should rarely, if ever, be read to the jury.

The defense attorney in this case, pursuant to statute, MCL 768.20; MSA 28.1043, filed a notice of alibi. The notice listed two alibi witnesses, Darwin Halsey of 1424 South St. Louis, Chicago, Illinois, first-floor apartment, and Diane Holmes of 1424 South St. Louis, Chicago, Illinois, basement apartment. The notice also stated:

> That defendant claims he was between Kellogg Regional Airport, Battle Creek, Michigan, and 1424 South St. Louis, Chicago, Illinois, between 8:25 P.M. and 2 A.M. on the 15th and 16th days of July, 1986.

At trial on direct examination, defendant testified that on July 15, 1986, he was driven to Chicago by an uncle and a young lady. Defendant did not identify the uncle by name and indicated that his uncle had a young lady with him, but he could not remember her name. On cross-examination, the prosecutor elicited from defendant the name of his uncle, Darwin Halsey, and the color and make of the automobile being driven. Defendant further testified on cross-examination that he could not remember the name of the young lady who accompanied his uncle, and responded "I don't think so" when asked if it was Doris Holmes.

Immediately following defendant's testimony the defense rested and the judge so advised the jury. Since it was late in the day, the judge adjourned court until the following morning and advised the jury that the prosecution, although not obligated, might present rebuttal testimony when trial commenced the next day. The following morning, the prosecution sought to recall defendant to the stand to rebut matters contained in his notice-of-alibi

pleading. Defendant's counsel strenuously objected
and told the court that defendant already testified
and had been available for cross-examination and
defendant would refuse to give testimony for the
prosecutor's rebuttal. Defense counsel stated:

> *Mr. Stevens:* This is the stupidest thing I have
> ever heard the prosecutor say in court. I filed that
> pleadings [sic] because I had a deadline and I
> thought I might develop a defense. That's my
> pleading. What the defendant told me this prose-
> cutor is never going to find out. I filed that so I
> wouldn't be cut off in case my investigation bore
> that out. It didn't. I didn't. I didn't mention it in
> my opening statement. I didn't offer any proofs. I
> never mentioned those names. I was very careful
> to tell the court I'm not going to give you any
> names. That was my choice and I'm not going to
> use it now. I decided not to use it for reasons, for
> strategy reasons, and for reasons known to me
> with the information I developed.
>
> Marlon Holland is not going to take the stand
> again, Judge. He is not going to testify and not
> going to be subjected to the prosecutor trying to
> pull a fast one. He got away with everything else
> here. He is not going to get away with this. I will
> make a record in front of the jury if I have to that
> that was my choice. It was not Marlon Holland's.
> We offer no proofs as far as alibi. That's not
> rebuttal.

The court and the prosecutor recognized that, in
view of defense counsel's position, defendant would
not testify if called. The prosecutor then stated:

> *Mr. Sahli:* . . . However, the notice of intent to
> produce alibi witnesses is a part of the court's
> records. The Court can take judicial notice of it. I
> ask that you take true and tested copies, they be
> entered into the record, and let the jury decide
> what they wish to do with that.

Defense counsel again objected to the notice of alibi being presented to the jury and requested a mistrial if it was to be permitted. The court denied defendant's motion and ruled that it would advise the jury that a pleading was filed with the court by the defense and it would read the notice of alibi to the jury. The jury was then brought into the courtroom and the judge stated:

> *The Court:* Ladies and gentlemen, let me explain something to you. In the court file, there was filed on April 2, 1987 a notice of alibi that was signed by Richard G. Stevens that reads as follows: To Jon R. Sahli, Chief Assistant Prosecuting Attorney, take notice that the defendant in the above-entitled matter proposes to offer in his defense testimony to establish an alibi and give notice of his intention to claim such defense, that the names of witnesses known to the defendant to be called to establish such defense are Darwin Halsey, 1424 South St. Louis, Chicago, Illinois, first floor apartment, Diane Holmes, 1424 South St. Louis, Chicago, Illinois, basement apartment, that defendant claims he was between Kellogg Regional Airport, Battle Creek, Michigan and 1424 South St. Louis, Chicago, Illinois between 8:25 P.M. and 2:00 A.M. on the 15th and 16th days of July, 1986, dated March 31, 1987.
>
> This is a pleading in the file, ladies and gentlemen.

The notice of alibi statute, MCL 768.20; MSA 28.1043, in pertinent part provides:

> (1) If a defendant in a felony case proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after the arraignment but not less than 10 days before the trial of the case, or at such other time as the court directs, file and

serve upon the prosecuting attorney a notice in writing of his intention to claim that defense. The notice shall contain, as particularly as is known to the defendant or the defendant's attorney, the names of witnesses to be called in behalf of the defendant to establish that defense. The defendant's notice shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense.

Under this statute, unlike the procedure followed in at least one other jurisdiction,[1] the defendant himself is not required to sign or affirm the contents of the notice of alibi. Rather, it is prepared and signed by the defendant's attorney. As such, it would seem that the document itself, as well as its contents, would constitute a nontestimonial event.

The purpose of the notice of alibi is to enable the prosecution to investigate the merits of such a defense prior to trial and to permit the orderly progression of a criminal case without having to deal with elements of surprise and unnecessary delay. See, e.g., *People v Merritt*, 396 Mich 67, 85; 238 NW2d 31 (1976). Presumably, if the prosecution's investigation revealed that the alibi was meritorious, the prosecution could halt the criminal proceedings at an early stage. On the other hand, if the prosecution determined that the alibi was without merit, the prosecution would be in a position to challenge alibi testimony from the defendant at trial. Therefore, the justification for the notice of alibi required is for a nontestimonial

[1] See New Jersey Rules of Evidence, Rule 3:11-1, under which a defendant who intends to rely on an alibi shall, on written demand of the prosecuting attorney and within ten days thereafter, furnish a written bill of particulars, *signed by him,* stating the specific place or places at which he claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi.

purpose, i.e., discovery and trial preparation. The penalty imposed for failing to comply with the statutory notice requirement is preclusion of the alibi testimony from witnesses, other than the defendant. *Id.*

I see no useful purpose and considerable potential prejudice in allowing the prosecutor to refer to, let alone the court to read, the notice of alibi filed pursuant to statute. To permit such a procedure is inconsistent with the intent of the statute and could improperly shift the burden of proof to the defendant, who effectively would be called upon to prove the contents of his notice of alibi.[2] See *People v Shannon,* 88 Mich App 138; 276 NW2d 546 (1979).

Moreover, defense counsel, who must file a notice of alibi rather early in the criminal proceeding, would encounter a chilling effect if the alibi notice could be read to a jury. Defense counsel could be called as a witness at trial to defend why a name was put on the notice or why counsel failed to call the witness so listed.[3] Any number of legitimate reasons could exist as to why a witness was listed on an alibi notice and then not called.

---

[2] The impropriety of burden-shifting by implying that the defendant is somehow obligated to present evidence of an alibi in order to prove his innocence was recently addressed by our Court in *People v Rosales,* 160 Mich App 304; 408 NW2d 140 (1987), lv den 429 Mich 861 (1987). This Court reversed the defendant's conviction because the prosecutor in the rebuttal part of his closing argument commented upon the defendant's failure to present any corroborating testimony to indicate where he was on the date of the crime. Further, there is no process in Michigan to abandon a notice of alibi defense once filed.

[3] Although information which forms the basis for preparing the alibi notice frequently comes from the defendant, this is not always the case. On occasion, the information comes from other sources or the attorney's own investigation. If the procedure utilized in this case is permitted, one can envision the scenario developing where the attorney will have to withdraw from the case during trial, thus causing delay and confusion, so that the attorney can be sworn as a witness to explain or refute information in the notice of alibi. This result clearly would be inconsistent with the orderly administration of justice.

Yet, a defendant could be placed in the awkward position of defending the notice filed by his attorney. Simply, the purpose of the alibi-notice statute is for the public good, *Merritt, supra,* not for creating an evidentiary document to be paraded before a jury.

A balance has currently been created between avoiding surprise at trial by the unexpected introduction of an alibi defense which cannot be investigated without adjourning the trial and the defendant's constitutional rights against self-incrimination and to produce witnesses in his defense. In my view, to allow the notice of alibi to be used as a testimonial weapon against a defendant eschews that balance. While there may be some very limited circumstances wherein a reading of a defendant's notice of alibi should be allowed to be read to the jury, this clearly was not such a case. However, due to the overwhelming evidence of defendant's guilt, I concur with the majority that any error was harmless.

Finally, in reference to defendant's sentence of sixty to ninety years, I would remand this matter to the trial court for reconsideration in light of our Supreme Court's recent pronouncement in *People v Moore,* 432 Mich 311; 439 NW2d 684 (1989).