# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AARON DESMOND DAVIS,

        Defendant-Appellant.

UNPUBLISHED
July 12, 2016

No. 326501
Wayne Circuit Court
LC No. 14-009733-FC

Before: JANSEN, P.J., and FORT HOOD and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of armed robbery, MCL 750.529. The trial court sentenced defendant as a second habitual offender, MCL 769.10, to 65 to 240 months' imprisonment. We affirm defendant's conviction, but remand for further proceedings consistent with the Michigan Supreme Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

After an incident that occurred in the early morning hours of August 22, 2014, the victim, Antwain Rogers, Sr., identified defendant as the person who stuck a sawed off shotgun in his side and forced Rogers to give him money while Rogers sat in his car. Defendant was charged with armed robbery, MCL 750.529, possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant brought a pretrial motion to suppress Rogers's photographic lineup identification of defendant as the perpetrator, but the trial court denied the motion after an evidentiary hearing. The matter proceeded to a jury trial, and the jury found defendant guilty of armed robbery and not guilty of the firearm charges.

Defendant first argues that he was denied due process of law when the trial court denied his motion to suppress his photo lineup identification because the photo array was unduly suggestive and because he was in custody at the time of the lineup. We disagree.

In relation to a motion to suppress identification evidence, this Court reviews the trial court's decision regarding the admission of the identification evidence for clear error, and reviews relevant issues of law de novo. *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*.

-1-

"A photographic identification procedure or lineup violates due process guarantees when it is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *McDade*, 301 Mich App at 357. The issue is determined based on the totality of the circumstances. *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). "Physical differences among the lineup participants do not necessarily render the procedure defective and are significant only to the extent that they are apparent to the witness and substantially distinguish the defendant from the other lineup participants." *Id*. In general, the physical differences relate to the weight, rather than the admissibility, of the identification. *Id*. Furthermore, even if a photographic lineup is suggestive, it is only improper if there was a substantial likelihood of misidentification. *People v Kurylczyk*, 443 Mich 289, 306; 505 NW2d 528 (1993) (opinion by GRIFFIN, J.). "The relevant inquiry, therefore, is not whether the lineup photograph was suggestive, but whether it was unduly suggestive in light of all of the circumstances surrounding the identification." *Id*. Several factors to be considered include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. [*Id*. (citation and quotation marks omitted).]

This Court has concluded that a lineup was not impermissibly suggestive when the defendant was the second tallest person in the lineup and was heavier than the other participants, when there were age and height differences between the defendant and the other participants and the defendant had a scarred face, or when the defendant was the only individual in the lineup who had both a mustache and goatee. *Kurylczyk*, 443 Mich at 312 (opinion by GRIFFIN, J.). This Court in *McDade*, 301 Mich App at 357-358, found useful this Court's observation in *People v Dean*, 103 Mich App 1, 10; 302 NW2d 317 (1981), that when considering the totality of the circumstances, "the mere fact that defendant's photograph was taken from a vertical angle was [not] so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Here, defendant complains his photograph in the photo array was so different from the other photos that it stood out prominently, even at first glance. In particular, defendant argues that his face was stretched out and that he was the only person in the array who was smiling with his mouth open. The prosecution does not dispute that defendant's head was larger than the heads of the other individuals in the photographic lineup and that defendant was the only individual with a broad smile. A review of the black and white photo array displays headshots of six African American males of similar age and similar skin tone.[1] Height and build cannot easily

---

[1] Defendant points out in his reply brief that Rogers testified during the preliminary examination that the photographs were in color. However, the officer who created the photograph lineup testified that the lineup was in black and white, and a colored photographic lineup was never produced for the trial court's review. In addition, even assuming that Rogers viewed a colored photographic array, defendant does not explain how this fact, in and of itself, rendered the lineup

be discerned because the individuals are displayed from the neck up. Two of the men appear to have braided hair, two of the men, including defendant, have dreadlocks, and the last two have afro hairstyles. All six men appear to have facial hair, either goatees or beards, though it is hard to tell whether defendant has facial hair. Three of the men have dark shirts, and three of the men have white shirts. Four of the men have oval face shapes, one of the men has a longer, thinner face, and defendant's face appears to be slightly wider and more round. Four of the men are not smiling, one man appears to have a very small smile, and defendant is broadly smiling.

Defendant claims that his face was stretched out and that he was the only individual who was smiling with his mouth open. He argues that these differences merit suppression and reversal. But he fails to explain how the differences would result in a substantial likelihood of misidentification, as opposed to merely constituting "noticeable" differences. See *McDade*, 301 Mich App at 358. As the *McDade* Court stated, "If one were to accept defendant's complaints about the slight physical differences or variations, it would make it nearly impossible for the police to compose a lineup, forcing authorities to search for 'twin-like' individuals to match against a defendant." *Id*. We do not see how these discrepancies would justify a conclusion that the photographic array was impermissibly suggestive.

Furthermore, the record evidence displays that Rogers was aware and attentive during the incident, watching defendant the whole time. Defendant approached Rogers twice during the incident, was in close proximity to Rogers while he was robbing him, and was not wearing a mask or other facial covering. Rogers testified that the incident occurred near a working streetlight. Rogers repeatedly testified that he was certain in his identification both at the evidentiary hearing and at trial. Rogers testified that the police did not suggest to him that defendant was depicted on the photographic lineup and did not suggest that the perpetrator was displayed on the lineup. Also, significantly, only five days passed between the incident and the date of the photo lineup, during which time Rogers saw defendant again. Under these circumstances, even if the photographic lineup was suggestive, there was no substantial likelihood of misidentification in this case. We conclude that the composition of the photographic lineup was not impermissibly suggestive to the extent that it would have given rise to a substantial likelihood of misidentification.[2]

Defendant also argues that he was in custody at the time of the photographic lineup and that he had a right to counsel. " 'In the case of photographic identifications, the right of counsel attaches with custody.' " *People v McCray*, 245 Mich App 631, 639; 630 NW2d 633 (2001), quoting *Kurylczyk*, 443 Mich at 302 (opinion by GRIFFIN, J.). But this rule is only triggered

impermissibly suggestive, and he does not explain what characteristics of the colored photographic lineup rendered it impermissibly suggestive.

[2] Defendant contends that Rogers "was influenced by talk around the neighborhood" with regard to the name of the perpetrator and information regarding the close relatives of the perpetrator. Assuming this is the case, defendant fails to explain how the fact that Rogers knew the perpetrator's name and information about his family affected his identification of defendant as the perpetrator on the photographic lineup, which did not contain the names of the individuals or any information regarding their families.

when a defendant is in custody. When a defendant is not in custody at the time of the photographic lineup, he "is entitled to counsel at a precustodial investigatory photographic lineup only when the circumstances underlying the investigation and the lineup are unusual." *People v Lee*, 243 Mich App 163; 622 NW2d 71 (2000) (citation and quotation marks omitted).

This issue was raised below, and the trial court relied on the testimony of police officers when it concluded that defendant was not in custody at the time of the photo lineup. Detroit Police Officer Nzinga Moore testified that he had been investigating defendant on a charge unrelated to this case. He explained that defendant had been in custody, but was released on that charge before the armed robbery investigation. Detroit Police Sergeant Robert Turner and Detroit Police Officer Brian Hanks, who were both present at the time of the photo lineup, clearly testified at the evidentiary hearing that defendant was not in custody at the time of the photographic lineup. At the evidentiary hearing, defendant presented no evidence to the contrary.

On appeal, defendant relies on a register of actions from the 36th District Court, asserting that the register of actions demonstrates that defendant was not released from custody until August 27, 2014, which was the same date as the photo lineup. Defendant may not enlarge the record on appeal. See MCR 7.210(A)(1); *People v Williams*, 241 Mich App 519, 524 n 1; 616 NW2d 710 (2000). Even if this Court were to consider this evidence, while the register of actions does reflect that defendant's jail release was received on August 27, 2014, it does not show what time of day defendant was released, and defendant provides no information or additional evidence regarding what time of day the photo lineup occurred. Because two officers testified that defendant was not in custody at the time of the lineup, and the register of actions reflects that defendant was released on the day of the lineup, the evidence supports the trial court's conclusion. Furthermore, defendant does not contend that there were any unusual circumstances warranting counsel during the precustodial photographic lineup. Therefore, we find no error.

Defendant next argues that he is entitled to resentencing because the scores he received for offense variable (OV) 1, OV 2, and OV 3 were not supported by a preponderance of the evidence. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). However, whether the facts as found by the court are sufficient to justify the scoring conditions prescribed by statute is a legal question to be reviewed de novo. *Id*.

Defendant argues that OV 1, aggravated use of a weapon, was incorrectly scored at 15 points and should be scored at 0 points because the jury found him not guilty of felon-in-possession and felony-firearm. The trial court scored OV 1 at 15 points, concluding that a preponderance of the evidence showed that a "firearm was pointed at or toward a victim[.]" MCL 777.31(1)(c). Indeed, a review of the record reveals that Rogers clearly testified that defendant stuck a sawed off shotgun in his left side while robbing him. Defendant next argues that OV 2, lethal potential of a weapon possessed or used, was incorrectly scored at 10 points and should be scored at 0 points. The trial court scored OV 2 at 10 points, concluding that a

preponderance of the evidence showed that defendant used a "short-barreled rifle or a short-barreled shotgun." MCL 777.32(1)(c). Indeed, a review of the record reveals that Rogers clearly testified that defendant stuck a sawed off shotgun in his left side while robbing him. Thus, the trial court correctly assessed 10 points for OV 2. Defendant further argues that OV 3, physical injury to a victim, was incorrectly scored at 10 points under the theory that "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). Rogers testified that defendant hit him in the face two or three times, which knocked his tooth out, made a hole in his face, and also caused a small cut over his eye. Rogers also testified that he lay in his driveway bleeding after the incident and that his wife treated his injuries. Although Rogers did not actually seek medical treatment, MCL 777.33(3) notes that the phrase "requiring medical treatment" only "refers to the necessity for treatment and not the victim's success in obtaining treatment." A preponderance of the evidence therefore supported the assessment of 10 points. Therefore, defendant fails to establish a scoring error warranting resentencing.

Defendant next argues, and the prosecution concedes, that the trial court engaged in judicial fact-finding at sentencing, which altered defendant's sentencing guidelines range and warrants remand. We agree.

Defendant failed to preserve his argument because he did not object to the scoring of the OVs on this ground. *Lockridge*, 498 Mich at 392. Therefore, the unpreserved issue is reviewed for plain error affecting defendant's substantial rights. See *id*. "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *Id*. at 392-393. With regard to the third requirement, the defendant must show prejudice, meaning that the error affected the outcome in the trial court. *Id*. at 393. Finally, the court must exercise its discretion in deciding if reversal is appropriate, and "[r]eversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence." *Id*.

Recently, our Supreme Court significantly altered the standards for sentencing criminal defendants in our state. In *Alleyne v United States*, 570 US ___; 133 S Ct 2151, 2155; 186 L Ed 2d 314, 321 (2013), the United States Supreme Court held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum "is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." In *Lockridge*, 498 Mich at 364, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient under the Sixth Amendment to the extent that "the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum' sentence under *Alleyne*." As a remedy, our Supreme Court "sever[ed] MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory." *Id*. The Court also struck "down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure." *Id*. at 364-365. The Court held that the "guidelines minimum sentence range" is advisory only and "that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Id*. at 365.

Courts must continue to determine the applicable guidelines range and take it into account when sentencing a defendant. *Id*.

With regard to an unpreserved challenge, where facts admitted by the defendant or found by the jury "were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced," a defendant did not suffer any prejudice and "there is no plain error and no further inquiry is required." *Lockridge*, 498 Mich at 394-395. However, where the facts found by the jury or admitted to by the defendant were insufficient to assess the minimum number of OV points for the defendant's score to fall in the cell of the sentencing grid under which he was sentenced, "an unconstitutional constraint actually impaired the defendant's Sixth Amendment right," and in the absence of an upward departure, defendants "who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment . . . can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id*. at 395.

While the jury found defendant guilty of armed robbery, the jury's verdict does not reflect that defendant actually pointed a firearm at Rogers, because it is not an element of armed robbery.[3] Although Rogers testified that defendant pointed a sawed off shotgun at him, this fact was not necessary to support the armed robbery conviction. Therefore, as defendant argues and the prosecutor concedes, the trial court's assessment of 15 points for OV 1 was based on facts that were not admitted by defendant or found beyond a reasonable doubt by the jury.

---

[3] The armed robbery statute, MCL 750.529, provides, in relevant part:

> A person who engages in conduct proscribed under [MCL 750.530] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

MCL 750.530 provides:

> (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

While the jury found defendant guilty of armed robbery, the use of a sawed off shotgun or any type of firearm is not an element of the crime. See MCL 750.529. Further, the jury found defendant not guilty of two firearms-related charges, felon-in-possession and felony-firearm. Thus, the use of a sawed off shotgun or any sort of firearm was not reflected in the jury verdict. Therefore, as defendant argues and the prosecutor concedes, the trial court's assessment of 10 points for OV 2 was based on facts that were not admitted by defendant or found beyond a reasonable doubt by the jury. Consequently, the trial court engaged in judicial fact-finding with regard to the assessment of 10 points for this offense variable.

With regard to the assessment of 10 points for OV 3, the jury's verdict did not reflect its finding on this issue because physical injury is not an element of armed robbery. See MCL 750.529. Accordingly, the judge had to determine from the record evidence whether Rogers suffered bodily injury requiring medical treatment. Therefore, as defendant argues and the prosecutor concedes, the trial court's assessment of 10 points for OV 3 was based on facts that were not admitted by defendant or found beyond a reasonable doubt by the jury. Consequently, the facts found by a jury support a score of 0 points under this variable.

Defendant was sentenced before July 29, 2015, the date of the *Lockridge* decision. When scored on the basis of the facts necessarily found by the jury, defendant's total OV score is reduced from 35 to 0, which changes his OV level from II to I on the Class A grid. See MCL 777.62. Defendant was assessed five prior record variable (PRV) points, placing him at PRV-level B. As a second habitual offender, his sentencing guidelines range would be 27 to 56 months, instead of the originally calculated range of 42 to 87 months. See MCL 777.62; MCL 777.21(3)(a). Defendant's original 65-month minimum sentence fell within the calculated guidelines range of 42 to 87 months. Therefore, it is necessary to remand the case to the trial court in accordance with the "*Crosby*"[4] remand procedure set forth in *Lockridge* to determine whether the court would have imposed a materially different sentence but for the constitutional error. See *Lockridge*, 498 Mich at 395-399. The court should only consider the circumstances that existed at the time of defendant's original sentence. *Id.*

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law if it decides to resentence the defendant. [*Id.* at 398 (citation omitted).]

If the court decides that it would not have imposed a materially different sentence, it must place on the record a decision not to resentence with explanation. *Id.* If the court decides that it would have imposed a materially different sentence, it shall vacate the sentence and, with defendant present, resentence defendant. *Id.*

---

[4] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

Affirmed, but remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Mark T. Boonstra