PEOPLE v THORNTON

1. CRIMINAL LAW—PHOTOGRAPHS—IDENTIFICATION—CUSTODY—RIGHT TO COUNSEL—WITNESSES—DISTANCE.

   Photographic identification of an accused should not be used where the accused is in custody, and where there is a legitimate reason to use photographs for identification of an in-custody accused, he has the right to counsel as much as he would for corporeal identification procedures; an exception which may justify the use of photographs occurs when the witnesses are at a place far distant from the location of the in-custody accused.

2. COURTS—CRIMINAL LAW—EVIDENTIARY HEARING—IN-COURT IDENTIFICATION—IMPERMISSIBLE IDENTIFICATION—INDEPENDENT BASIS —COUNSEL—BURDEN OF PROOF.

   A trial court must hold an evidentiary hearing out of the presence of the jury to establish that an in-court identification has a basis independent of a prior impermissible identification procedure at which no counsel was present for the accused; the people must show the independent basis of the prior identification procedure by clear and convincing evidence before the in-court identification may be received.

3. CRIMINAL LAW—IDENTIFICATION—IN-COURT IDENTIFICATION—INDEPENDENT BASIS—DETERMINING FACTORS.

   Facts to be considered in determining the independence of an in-court identification are the witness's prior opportunity to observe the alleged criminal act, the existence of any discrepancy between the pretrial description and the defendant's actual appearance, any identification of another person before confrontation, photographic identification before confrontation, and the lapse of time between the alleged act and the confrontation identification.

4. CRIMINAL LAW—IDENTIFICATION—PHOTOGRAPHS—TESTS.

   The fairness of an identification procedure must be evaluated in light of the totality of the circumstances and the test is the

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 21 Am Jur 2d, Criminal Law §§ 368, 369.

degree of suggestion inherent in the manner in which the suspect's photograph is presented to the witness for identification.

Appeal from Genesee, Harry B. McAra, J. Submitted May 13, 1975, at Lansing. (Docket No. 19508.) Decided July 23, 1975.

Prentice Thornton was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Martin A. Tyckoski,* for defendant on appeal.

Before: QUINN, P. J., and BRONSON and N. J. KAUFMAN, JJ.

PER CURIAM. On October 29, 1973, defendant was convicted by a Genesee County Circuit Court jury of armed robbery, contrary to MCLA 750.529; MSA 28.797. Defendant was sentenced, on December 19, 1973, to a term of from 5 to 15 years in prison and now appeals of right.

Defendant's conviction arose out of a March 3, 1973, robbery of a Flint hotel. The robbery was committed by a lone gunman who ordered the two employees on duty, Dayle Morris and Mildred Johnson, to empty the hotel cash drawer into a bag. The robber also took a number of credit cards from Ms. Morris. On March 6, 1973, defendant was arrested and placed in custody by police in Memphis, Tennessee when he attempted to use a Bank Americard bearing Dayle Morris' name. This card was one of the credit cards taken from Ms. Morris in the hotel robbery.

The Flint police were notified of defendant's arrest by the Memphis authorities and requested a photograph of defendant from the Memphis police. On March 10, 1973, the Flint police showed seven photographs, including the one of defendant sent by the Memphis police, to Dayle Morris and Mildred Johnson. Defendant was not represented by counsel at this photo display. After both witnesses picked defendant's picture from the display, a warrant for defendant's arrest was issued, and defendant was extradited from Tennessee for trial in Michigan. Both witnesses also identified defendant at a later line-up at which time defendant was represented by counsel.

On May 30, 1973, defendant filed a motion to suppress any identification made by the two witnesses because he claimed the "illegal photographic show-up tainted the subsequent line-up identification, and further, tainted any subsequent in-court identification of defendant". After a July 19 hearing, the trial court denied defendant's motion. The trial court found that defendant was not entitled to counsel at the photo show-up, that the line-up was not tainted and that a sufficient independent basis for in-court identification existed.

On appeal, defendant claims that the case of *People v Franklin Anderson,* 389 Mich 155; 205 NW2d 461 (1973), required counsel to be present at the photo show-up. Plaintiff responds that counsel was not required at the photo display and the in-court identification testimony was properly admitted.

The Supreme Court in *Franklin Anderson* promulgated two rules for pretrial identification procedures:

"1. *Subject to certain exceptions, identification by*

*photograph should not be used where the accused is in custody.*

"2. *Where there is a legitimate reason to use photographs for identification of an in-custody accused, he has the right to counsel as much as he would for corporeal ·identification procedures.*" (Footnotes omitted.) 389 Mich at 186–187; 205 NW2d at 476.

Applying these rules to the instant case, it is clear that the use of a photo display was legitimate. One of the "exceptions" to the line-up requirement which may justify the use of photographs under the first rule is where "[t]he witnesses are at a place far distant from the location of the in-custody accused". *Id.* at 187, fn 22, example 4.

We do not need to decide whether, under the *Franklin Anderson* rules, defendant was entitled to counsel at the photo display because we find that the trial court hearing clearly established a basis for an independent in-court identification. Any error would have been harmless.

Under the *Franklin Anderson* "harmless error" rule:

"If there was no counsel at the pretrial identification * * * , then before an *in-court* identification may be received in evidence, the trial court must hold an evidentiary hearing out of the presence of the jury at which the people must show by clear and convincing evidence that the in-court identification had a basis independent of the prior identification procedure * * * ." 389 Mich at 169. (Emphasis in original.) (Footnote omitted.)

An in-court identification which was preceded by a questionable or illegal confrontation will not be deemed inadmissible if the in-court identification has an independent basis. *People v Fry,* 55 Mich App 18; 222 NW2d 14 (1974).

Among the facts to be considered in determining the independence of an in-court identification are:

"the witness' prior opportunity to observe the alleged criminal act; the existence of any discrepancy between any pretrial description and the defendant's actual appearance; any identification of another person before confrontation; photogenic [sic] identification before confrontation; * * * and the lapse of time between the alleged act and the confrontation identification." *People v Hutton,* 21 Mich App 312, 326; 175 NW2d 860 (1970) *lv den* 383 Mich 796 (1970).

The testimony elicited at the July 19, 1973, evidentiary hearing discloses more than enough information upon which the court could properly hold that there was a sufficient independent basis for the identification of this defendant. Dayle Morris testified that she first noticed the robber, while on duty at the hotel, at approximately 6 a.m., March 3, 1973. The man was sitting in a chair in the lobby. After the coffee shop opened, he went into it. The lobby was lit sufficiently and there was no reason one could not see well there. Ms. Morris described the man as having a carefree walk. She said that he was tall and slim and was wearing a wide-brim hat, a light gray leather jacket, a burgundy or cranberry knit top, dark trousers and shoes with heels and platform soles. As to his skin color, the witness invented a new color characterization, "Belafonte tone". The witness testified that she was able to observe the robber's face and testified that he sat in the lobby for approximately 20 minutes, and that she paid close attention to him because she was suspicious of everybody when she was alone at the hotel desk. She stated that she paid particular attention to the robber because he was much better dressed than the normal 6

a.m. clientele. During the robbery, he was approximately 18 inches away from Ms. Morris and she had an opportunity to view his face. She observed him for a total of approximately 25 minutes. Importantly, on cross-examination, Morris testified that she could have identified the defendant if she had not seen the photographs or observed the line-up. She testified that, because of her skills as an artist, she could have drawn a picture of him following the robbery.

Mildred Johnson also viewed the robber in close proximity and gave a similarly detailed description. She also testified that she could have identified the defendant without having seen the photographs or the line-up. Both witnesses testified at the hearing that they experienced no reticence at either the photo display or line-up in identifying defendant. In addition, the only mention at trial of the photographic identification of defendant by the two eyewitnesses was elicited by the questioning of defense counsel. Any "taint" of an improper photo display would not only have been minimal but also have been caused by defendant himself.

Defendant further claims that the photographic identification was impermissibly suggestive because of two differences between his photograph and the six other photographs shown to the witnesses. The six other pictures were of a "stand-up nature", *i.e.,* the full body length of the subject. The seventh picture, the picture of defendant, was a portrait nature and showed predominantly his head and the area above his shoulders. The defendant's photograph also contained the following source information: "Police Department, Memphis, Tennessee." The other six photographs contained the reference "Police Department, Flint, Michigan." Predominantly on the basis of such distinc-

tions, defendant alleges the display to have been impermissibly suggestive.

In *People v Lee,* 391 Mich 618, 626; 218 NW2d 655 (1974), the Court said:

"The fairness of the identification procedure must be evaluated in the light of the totality of the circumstances. The test is the degree of suggestion inherent in the manner in which the suspect's photograph is presented to the witness for identification."

While it may have been unfortunate that defendant's picture differed from those of the other members of the display, we do not find from the totality of the circumstances and evidence presented at the pretrial hearing that the differences noted were sufficient to hold that the display was impermissibly suggestive. We, thus, affirm the trial court's determination as to this issue.

Affirmed.