# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WESLEY DEWAHN PERRY,

        Defendant-Appellant.

UNPUBLISHED
March 29, 2016

No.  324422
Wayne Circuit Court
LC No.  14-004977-FC

Before:  K. F. KELLY, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carjacking, MCL 750.529a, armed robbery, MCL 750.529, unlawful imprisonment, MCL 750.349b, felonious assault, MCL 750.82, carrying a concealed weapon, MCL 750.227, felon in possession of a firearm, MCL 750.224f, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and fourth-degree child abuse, MCL 750.136b.  Defendant was sentenced, as a third habitual offender, MCL 769.11, to 20 to 40 years' imprisonment for the carjacking conviction, 20 to 40 years' imprisonment for the armed robbery conviction, 5 to 10 years' imprisonment for the unlawful imprisonment conviction, two to eight years' imprisonment for the felonious assault conviction, 1 to 10 years' imprisonment for the carrying a concealed weapon conviction, 14 months to 10 years' imprisonment for the felon in possession of a firearm conviction, two years' imprisonment for the felony-firearm conviction, and to time served for the fourth-degree child abuse conviction.  For the reasons set forth in this opinion, we affirm.

This appeal arises out of the alleged carjacking and robbery of a cab driver in the City of Detroit.  On April 13, 2014, Curtis Smith was driving a cab for Metropolitan Cab when he received a call to pick up customers from the Suez Motel in Detroit, Michigan.  When Smith arrived at the hotel, defendant and defendant's seven year old daughter entered Smith's cab. Defendant told Smith to drive to a house located at the corner of King Richard and Whittier. When they arrived at the house, defendant and his daughter exited and knocked on the door of the house.  When they received no answer, they reentered Smith's cab.  Defendant exited the vehicle again and walked behind Smith's cab.  Defendant then approached the driver's side window and pointed a gun at Smith.  Defendant then ordered Smith to give him his belongings and to lay face down in the back seat of the cab.

-1-

Defendant then stopped at two houses and picked up an unidentified man at one of the houses. Defendant then drove, accompanied by the other man, to an abandoned house and ordered Smith out of the cab. Defendant again pointed his gun at Smith and ordered him to enter the abandoned house. After Smith refused, defendant forced him to the side of the house and kicked in the door. Smith then ran inside the house and into the upstairs level. From the upstairs level, Smith was able to observe defendant and the other man reenter the cab and drive away.

One week after the incident, Smith went to the Detroit Police Department where he met with Detective Shawn Schmelter. Schmelter had prepared a photographic lineup containing a photograph of defendant and photographs of five other similar looking individuals. However, the photograph of defendant was lighter than the other photographs. In addition, the photograph of defendant had a red hue to it while the other five photographs had a grey and green hue to them. Upon viewing the lineup, Smith immediately circled the photograph of defendant and initialed next to it, indicating that defendant was in fact his assailant.

Defendant argues that his due process rights were violated when the trial court refused to suppress Smith's in-court identification of defendant after Smith had been exposed to an unfairly suggestive photographic lineup. "This Court will not reverse a trial court's decision to admit identification evidence unless it finds the decision clearly erroneous. Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). "Issues of law relevant to a motion to suppress are reviewed de novo." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013).

"A photographic identification procedure or lineup violates due process guarantees when it is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *Id*. at 357. In determining whether a lineup was impermissibly suggestive, the totality of the circumstances must be considered. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). These circumstances include the opportunity for the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description, the witness's level of certainty at the time of the lineup, and the length of time between the crime and the lineup. *People v Colon*, 233 Mich App 295, 305; 591 NW2d 692 (1998). "[W]hen the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998) (citations and quotations omitted).

"If the trial court finds that the pretrial procedure was impermissibly suggestive, testimony concerning that identification is inadmissible at trial. However, in-court identification by the same witness still may be allowed if an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303. The prosecution must prove the existence of an independent basis for identification by clear and convincing evidence. *Gray*, 457 Mich at 115 (citation omitted). Because the trial court did not find the photographic lineup to be impermissibly suggestive, a remand to the trial court would be necessary to determine whether there was an independent basis for the in-court identification. *People v Kachar*, 400 Mich 78, 91; 252 NW2d 807 (1977).

It is important to begin, by reasserting, the Supreme Court's declaration that: "The Constitution, our decisions indicate, protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit. Constitutional safeguards available to defendants to counter the State's evidence include the Sixth Amendment rights to counsel." *Gideon v. Wainwright*, 372 US 335, 343–345, 83 S Ct 792, 9 L Ed2d 799 (1963). In this case, this Court cannot state that the photographic lineup involving defendant was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. While the photographic lineup attached to defendant's brief on appeal is in black and white, the record indicates that the parties did not dispute the fact that defendant's photograph was lighter and had a different color hue to it. Although Schmelter and the prosecution acknowledged that the photograph of defendant was slightly lighter and had a different color hue to it, a review of the lineup demonstrates that the other five men shared similar physical characteristics as defendant. Like defendant, the other five individuals in the photographic lineup were African-American men of similar height, weight, and facial hair. Although the lighting and hue of defendant's picture was different, the Michigan Supreme Court has held that "differences in the composition of photographs . . . have been found not to render a lineup impermissibly suggestive." *Kurylczyk*, 443 Mich at 289. Our Supreme Court cited cases where photographic lineups were not found to be impermissibly suggestive even where the defendant's photograph was composed vertically while the other photographs were composed horizontally and where the defendant's photograph was only a "head and shoulders" shot while the other photographs were full body length. *Id*. (citing *People v Dean*, 103 Mich App 1; 302 NW2d 317 (1981); *People v Thornton*, 62 Mich App 763, 768; 233 NW2d 864 (1975)).

In addition, the totality of the circumstances indicates that the lineup was not unduly suggestive. "The relevant inquiry . . . is not whether the lineup photograph was suggestive, but whether it was unduly suggestive in light of all of the circumstances surrounding the identification." *Kurylczyk*, 443 Mich at 306. Smith had ample opportunity to view defendant at the time of the crime given that he was driven to multiple locations over a long period of time before he was eventually freed. Smith also likely was paying close attention to the identity of his assailant given their close proximity and the amount of time they were together. In regard to the accuracy of Smith's prior description, in a written statement, Smith described his assailant as having a thin build, mustache, goatee, and a light complexion. While this was an accurate description of defendant, Smith also described his assailant as having a tattoo on his neck. On cross-examination at trial, Smith conceded that defendant had no such tattoo.

However, at the photographic lineup, Smith had no hesitation in identifying defendant as his assailant. In addition, the photographic lineup took place only one week after the incident in question. All of this testimony taken together indicates that there was conflicting evidence surrounding the identification of defendant. However, "Our legal system ... is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses." Only when evidence "is so extremely unfair that its admission violates fundamental conceptions of justice," *Dowling v. United States*, 493 US 342, 352, 110 S Ct 668, 107 L Ed2d 708 (1990) (internal quotation marks omitted), have we imposed a constraint tied to the Due Process Clause. See, *e.g., Napue v. Illinois*, 360 US 264, 269, 79 S Ct 1173, 3 L Ed2d 1217 (1959) (Due process prohibits the State's "knowin[g] use [of] false evidence," because such use violates "any concept of ordered liberty.") We find no evidence from the record presented that would lead us to

conclude that the p[photographic array was " . . . so fundamentally unfair so that it violated defendant's due process rights." *Dowling*, 493 US at 352. Accordingly, despite Smith's inaccurate statement regarding a tattoo on defendant's neck, the totality of the circumstances indicate that the photographic lineup was not unduly suggestive.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Stephen L. Borrello