# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STAN JAMARIO-DENEKE BLOCKTON,

        Defendant-Appellant.

UNPUBLISHED
May 23, 2017

No. 329608
Genesee Circuit Court
LC No. 14-036322-FC

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to commit murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. He was sentenced as a third habitual offender, MCL 769.11, to 26 to 50 years in prison for the assault conviction and 5 to 10 years in prison for the felon-in-possession conviction, to be served concurrently but consecutive to a five-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

Defendant's convictions arise from the October 3, 2014 shooting of Juarez Gay at the Hollywood Liquor Store in Burton, Michigan. Shortly before the incident, defendant entered the liquor store, made a purchase, and left the premises. Surveillance footage confirms that a man arrived at the store in a light-colored sedan with a sunroof and spoiler, entered the store, made a purchase at the window, and exited about five minutes later. Subsequently, Gay walked to the store, purchased some items inside, and exited the building. As he was walking toward the street, Gay saw a light gray Impala with tinted windows approach and enter the parking lot without using a turn signal. The vehicle stopped three or four feet away from Gay with the window rolled down. The male driver had a black gun drawn, and he said, "[G]ive it up," as he pointed the gun toward Gay. Gay turned back toward the store and was shot as he went inside.

When the police arrived after the shooting, Gay was rolling around, crying, and asking for help. He was unable to answer any questions related to the incident, including whether he could identify the man who shot him. However, at the hospital the following day, Gay told

-1-

Detective Donald Schrieber that the shooter was a black male, about five feet, eight inches tall, with a mustache, goatee, and white shirt.

Subsequently, the police based their investigation on information that the shooter's description was consistent with a person known as "Rio." As discussed later in this opinion, the investigation of "Rio" ultimately resulted in the police focusing on defendant as a suspect. Later, Gay identified defendant as the shooter in a photographic array. During the investigation, the police also discovered that a vehicle that matched the description of the shooter's vehicle was registered in the name of defendant's wife. Eventually, the police conducted surveillance on defendant and arrested him after he exited that vehicle. During a search of the vehicle, the police recovered a gun from the trunk. Ballistics testing confirmed that the gun seized from the car fired the shell casings that were recovered from the scene.

After a jury trial, defendant was convicted and sentenced as previously discussed.

## II. INADMISSIBLE HEARSAY

Defendant contends that three lines of testimony constituted inadmissible hearsay that violated his constitutional rights of confrontation and due process. He first challenges Detective Schrieber's testimony that Detective Eric Freeman said that (1) he worked on a case involving a similar vehicle description, and (2) the subject in Freeman's case had a street name of "Rio." Detective Schrieber testified that he used that information to send an email to other officers inquiring about "Rio" and the vehicle. Subsequently, Schrieber received Mario Brumley's name from an undercover sergeant and included Brumley's picture in the first photographic array reviewed by Gay, but Gay did not identify anyone as the perpetrator in that array. Second, defendant challenges Gay's testimony that (1) a neighbor told him that the shooter's nickname was "Rio," and (2) Gay reported that information to the police. Third, defendant challenges Trooper Dale Girke's testimony that he contacted an informant after he heard about the shooting, "came up with . . . a street name of Rio," and discovered after further searching "that Rio's real name was Stan Jamario-Deneke Blockton." Defendant also claims that defense counsel provided ineffective assistance by failing to object to this testimony. We reject defendant's evidentiary and constitutional claims.

## A. STANDARD OF REVIEW

A trial court's decision to admit or exclude evidence is generally reviewed for an abuse of discretion. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). In this case, however, defendant did not object to any of the challenged testimony, leaving these claims unpreserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant's unpreserved evidentiary challenges are reviewed for plain error affecting his substantial rights. *People v Ackerman*, 257 Mich App 434, 446; 669 NW2d 818 (2003). Likewise, his unpreserved constitutional claims are reviewed for plain error affecting substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014).

To demonstrate plain error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the

lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original).

Because defendant did not raise an ineffective assistance of counsel claim in the trial court through a motion for a new trial or evidentiary hearing, our review of this issue is limited to mistakes apparent from the record. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014); *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008), citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

> Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. To demonstrate ineffective assistance, defendant must show: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. [*People v Gaines*, 306 Mich App 289, 300; 856 NW2d 222 (2014) (quotation marks and citations omitted).]

"A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

## B. ANALYSIS

" 'Hearsay' is a statement," oral or written, "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801. Hearsay is not admissible unless it falls within an exception under the Michigan Rules of Evidence. MRE 802; *People v Solloway*, 316 Mich App 174, 199; 891 NW2d 255 (2016). However, an out-of-court statement is not hearsay if it is offered for a purpose other than to prove the truth of its contents. *People v Mesick (On Reconsideration)*, 285 Mich App 535, 540; 775 NW2d 857 (2009). "It is well-established that the proponent of evidence 'bears the burden of establishing [its] admissibility.' " *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 781; 685 NW2d 391 (2004), quoting *People v Crawford*, 458 Mich 376, 388 n 6; 582 NW2d 785 (1998).

The federal and state constitutions protect a defendant's right to be confronted with the witnesses against him in every criminal trial. US Const, Am VI; Const 1963, art 1, § 20. "The Confrontation Clause of the Sixth Amendment bars the admission of 'testimonial' statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *People v Walker (On Remand)*,

273 Mich App 56, 60-61; 728 NW2d 902 (2006). "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008) (quotation marks and citation omitted).

As explained in *People v Chambers*, 277 Mich App 1, 10-11; 742 NW2d 610 (2007), an out-of-court statement is neither hearsay nor a violation of the Confrontation Clause when it is not offered for the purpose of establishing the truth of the matter asserted:

> A statement by a confidential informant to the authorities generally constitutes a testimonial statement. *United States v Cromer*, 389 F3d 662, 675 (CA 6, 2004). However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted. *People v McPherson*, 263 Mich App 124, 133; 687 NW2d 370 (2004), citing *Crawford*, *supra* at 59 n 9. Thus, a statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause. *People v Lee*, 391 Mich 618, 642-643; 218 NW2d 655 (1974). Specifically, a statement offered to show why police officers acted as they did is not hearsay. *People v Jackson*, 113 Mich App 620, 624; 318 NW2d 495 (1982).

In *Chambers*, the defendant claimed that his right of confrontation was violated when a detective testified that he received a phone call from an FBI agent, who stated that one of the agent's informants recognized and identified the defendant from still photographs obtained from a video surveillance tape recorded during the crime. *Chambers*, 277 Mich App at 4, 10. This Court concluded that "the challenged testimony did not violate [the] defendant's right of confrontation. The testimony was not offered to establish the truth of the informant's tip. Rather, it was offered to establish and explain why the detective organized a surveillance of [the] defendant's home and how [the] defendant came to be arrested." *Id.* at 11. Because the defendant's right of confrontation had not been violated, this Court rejected his claim of ineffective assistance based on counsel's failure to object to the challenged testimony, as any objection would have been futile. *Id.*

As in *Chambers*, none of the three statements that defendant challenges regarding the nickname "Rio" were admitted for the truth of the matter asserted. Rather, they were offered to provide context for the course and chronology of the investigation, *i.e.*, how Brumley initially became a suspect and the focus of the first photographic array, how defendant subsequently became a suspect, and why the police acted as they did throughout the investigation. Compare *People v Henry (After Remand)*, 305 Mich App 127, 154-155; 854 NW2d 114 (2014) (concluding that an officer's testimony regarding a confidential informant's statements was improper). Accordingly, because the statements did not constitute inadmissible hearsay and did not violate defendant's right of confrontation, their admission at trial was not plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763; *Chambers*, 277 Mich App at 10-11.

In addition, Gay's testimony regarding how he heard the nickname "Rio" was first elicited by defense counsel. To allow defendant to claim as error on appeal testimony that his counsel deemed proper in the trial court would permit defendant to harbor error as an appellate

parachute. *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998); see also *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001) ("A defendant will not be heard to introduce and use evidence to sustain his theory at trial and then argue on appeal that the evidence was prejudicial and denied him a fair trial."); see also *People v Griffin*, 235 Mich App 27, 45-46; 597 NW2d 176 (1999) ("Because error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence, defendant has waived appellate review of this issue."), overruled in part on other grounds in *People v Thompson*, 477 Mich 146 (2007).

Furthermore, defendant cannot establish that any error in the admission of the testimony affected his substantial rights. Although defendant discredits the identification by Gay because Gay did not know defendant's legal name and a neighbor told Gay defendant's nickname, Gay explained at trial that he had seen defendant twice before and that he identified defendant in the second photographic array based on his memory of defendant's features, not the neighbor's statement about defendant's nickname. Likewise, there were no names or nicknames associated with the photos in the array, which allowed Gay to make his identification independent of any information from the neighbor about defendant's nickname. The evidence also showed that Gay was confident in his identification of defendant in the array. Furthermore, significant circumstantial evidence supported defendant's conviction. The shooter drove a light-colored Chevrolet Impala with a sunroof and spoiler. Defendant admitted that he was driving a light-colored Chevrolet Impala with a sunroof and spoiler that day, and that he bought a cigar at the liquor store shortly before the shooting. Additionally, several weeks later, when defendant was arrested after exiting the same light-colored Chevrolet Impala, the police recovered a gun from the trunk, which—according to an expert—fired the cartridge cases recovered from the liquor store parking lot after the shooting. In light of the extensive evidence supporting defendant's convictions, defendant cannot establish that the testimony pertinent to the investigation of "Rio" affected his substantial rights. Cf. *Henry*, 305 Mich App at 155.

Defendant also claims that defense counsel was ineffective for failing to object to the testimony concerning the investigation of "Rio." However, again, the testimony was not hearsay and did not violate defendant's right of confrontation. Therefore, because any objection on these grounds would have been futile, defendant cannot establish ineffective assistance. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004) ("Counsel is not ineffective for failing to make a futile objection.").

### III. MRE 404(b)(1)

Next, defendant again challenges Detective Schreiber's testimony about Detective Freeman's statements to him during the investigation. Specifically, defendant argues that the admission of the following evidence—in conjunction with Trooper Girke's testimony that "Rio" was defendant, based on information from an anonymous informant—violated MRE 404(b)(1) by implicating him in another crime, as it allowed the jury to believe that he was a "bad man" and diverted the jury's attention from the charged conduct: (1) Detective Schreiber's testimony that Detective Freeman said that he "recalled working a case with a similar description of a vehicle and he said that, uh, the subject in his case had a street name of Rio," and (2) Detective Schreiber's testimony that "Detective Freeman had mentioned that he knew a case with a guy named Rio out driving the same type of a vehicle." We disagree.

## A.  STANDARD OF REVIEW

Because defendant did not object to the testimony on this basis at trial, this issue is unpreserved, *Aldrich*, 246 Mich App at 113, and review is limited to plain error affecting defendant's substantial rights, *Ackerman*, 257 Mich App at 446.

## B.  ANALYSIS

MRE 404(b)(1) provides:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Relevant other-acts evidence is admissible unless the proponent's sole theory of relevance is "that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question . . . ." *People v VanderVliet*, 444 Mich 52, 62-63; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).  Accordingly, MRE 404(b)(1) "is inclusionary rather than exclusionary." *Id*. at 64 (quotation marks and citation omitted).  In *People v Smith*, 282 Mich App 191; 772 NW2d 428 (2009), this Court explained:

> In deciding whether to admit evidence of other bad acts [in accordance with MRE 404(b)], a trial court must decide: first, whether the evidence is being offered for a proper purpose, not to show the defendant's propensity to act in conformance with a given character trait; second, whether the evidence is relevant to an issue of fact of consequence at trial; third, [under MRE 403,] whether its probative value is substantially outweighed by the danger of unfair prejudice in light of the availability of other means of proof; and fourth, whether a cautionary instruction is appropriate.  [*Smith*, 282 Mich App at 194, citing *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000), and *VanderVliet*, 444 Mich at 74-75.]

Unfair prejudice under MRE 403 has been explained as follows:

> Obviously, evidence is offered by an advocate for the always clear, if seldom stated, purpose of "prejudicing" the adverse party.  Recognizing this, the Supreme Court in adopting MRE 403 identified only unfair prejudice as a factor to be weighed against probative value.  This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock. [*People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (quotation marks and citation omitted).]

Rather than implicating defendant in another crime, the challenged evidence merely established that Detective Freeman worked on another case involving a similar vehicle and a "subject" named "Rio." This testimony never addressed or established that the other case involved a crime (as opposed to an accident, for example). The reference to a "subject" also did not establish that, even if a crime was involved, defendant was a suspect, rather than a victim or a witness. In fact, according to Detective Schreiber's explanation of the course of the investigation, the information that Detective Freeman provided prompted an email to other officers, which then resulted in information that prompted the police to pursue Brumley as a suspect, not defendant. Because the challenged testimony did not involve evidence that defendant committed a crime, wrong, or bad act, MRE 404(b)(1) was not triggered. Accordingly, there was no plain error.

Furthermore, defendant cannot establish that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under MRE 403. The course of the investigation and how defendant became a suspect during the investigation (*i.e.*, through associations with his vehicle and nickname) were highly relevant topics in this case, especially given defendant's claims that he was not the perpetrator and that Gay misidentified him. See MRE 401; *People v Mills*, 450 Mich 61, 66-68, 72; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995) (discussing the components of relevancy). Because the reference to the other case did not directly implicate defendant in another crime, wrong, or bad act, little—if any—prejudice outweighed this probative value. Even if it was prejudicial, it was not unfairly so. See *People v Murphy (On Remand)*, 282 Mich App 571, 582-583; 766 NW2d 303 (2009) (stating that "[a]ll relevant evidence will be damaging to some extent," and explaining when evidence is unfairly prejudicial). Additionally, as discussed earlier in this opinion, overwhelming evidence supported defendant's convictions, regardless of Detective Schreiber's testimony. Thus, defendant cannot establish that any error affected his substantial rights.

Defendant claims that defense counsel was ineffective for failing to object to the testimony about the other case. Because the testimony did not trigger MRE 404(b)(1), any objection on that basis would have been futile. Thus, defendant cannot establish ineffective assistance. *Thomas*, 260 Mich App at 457.

## IV. SEARCH OF DEFENDANT'S VEHICLE

Defendant argues that evidence related to the gun seized from the trunk of his vehicle should not have been admitted at trial because it was discovered during an illegal search of the car after his arrest. We disagree.

## A. STANDARD OF REVIEW

Although defendant objected at trial to the admission of testimony concerning the search of his belongings, he did so on relevancy grounds. He alluded to the fact that he was challenging the merits of the search in another case, but he never challenged the underlying legality of the search of his vehicle that led to the discovery of the gun. Instead, he contended that the evidence should be excluded in this case because he "ha[d] not had the opportunity to have that case heard . . . ." Accordingly, defendant's constitutional claim is unpreserved, *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003) ("[A]n objection based on one ground at trial is insufficient

to preserve an appellate attack based on a different ground."), and reviewed for plain error affecting substantial rights, *Vandenberg*, 307 Mich App at 61.

## B. ANALYSIS

The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Kazmierczak*, 461 Mich 411, 417-418; 605 NW2d 667 (2000).[1] In *Kazmierczak*, 461 Mich at 417-418, the Michigan Supreme Court stated:

> The right to be secure against unreasonable searches and seizures absent a warrant based upon probable cause is subject to several specifically established and well-delineated exceptions. Probable cause to issue a search warrant exists where there is a "substantial basis" for inferring a "fair probability" that contraband or evidence of a crime will be found in a particular place. Generally, evidence obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in criminal proceedings.

> In order to show that a search was in compliance with the Fourth Amendment, the police must show either that they had a warrant or that their conduct fell within one of the narrow, specific exceptions to the warrant requirement. [Citations and footnotes omitted.]

Defendant primarily argues that the search of his vehicle was illegal because it did not qualify under the exception for searches incident to an arrest. He also briefly states, without citing any authority, that the search did not qualify under any other exception to the warrant requirement. However, he fails to recognize that under the automobile exception to the warrant requirement, a police officer may search an automobile without a search warrant if there is probable cause to support the search based upon information known to the officers at the time of the search. *United States v Ross*, 456 US 798, 808; 102 S Ct 2157; 72 L Ed 2d 572 (1982); *Kazmierczak*, 461 Mich at 418-419; *People v Levine*, 461 Mich 172, 179; 600 NW2d 622 (1999). The grounds for this exception are the inherent mobility and pervasive regulation of vehicles, which diminishes the expectation of privacy. *Kazmierczak*, 461 Mich at 418; *People v Carter*, 250 Mich App 510, 515, 517-518; 655 NW2d 236 (2002). The exception applies even when it is not likely that the vehicle will be driven away in the immediate future. *Carter*, 250 Mich App at 514-517; *Michigan v Thomas*, 458 US 259, 261; 102 S Ct 3079; 73 L Ed 2d 750 (1982) (holding that the automobile exception applies even after the occupants of the vehicle are arrested and the vehicle is immobilized and in police custody). Stated differently, there is no exigency requirement; under the automobile exception, police officers do not need a warrant to search a

---

[1] The Michigan Supreme Court has held "that the Michigan Constitution 'is to be construed to provide the same protection as that secured by the Fourth Amendment, absent "compelling reason" to impose a different interpretation.' " *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011) (citations omitted).

car if they have probable cause to believe that contraband is inside, regardless of whether the police would have the time and opportunity to obtain a warrant. *Ross*, 456 US at 809; *People v Clark*, 220 Mich App 240, 242; 559 NW2d 78 (1996).

"Probable cause . . . exists where there is a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *Kazmierczak*, 461 Mich at 417-418 (citation omitted); see also *id*. at 418 n 4; *People v Garvin*, 235 Mich App 90, 102; 597 NW2d 194 (1999) ("A finding of probable cause requires a substantial basis for . . . [concluding] that a search would uncover evidence of wrongdoing . . . .") (quotation marks and citation omitted; alterations in original). Whether probable cause exists in a given case is determined "in a commonsense manner in light of the totality of the circumstances." *Garvin*, 235 Mich App at 102.

Defendant did not file a motion to suppress the evidence resulting from the search, and the trial court did not conduct a suppression hearing. According to defendant's statements and Trooper Girke's testimony at trial, the police had an arrest warrant for defendant arising from the October 3, 2014 shooting, which was executed on October 27, 2014. When defendant was arrested at the Physician's Park parking lot after he exited the Chevrolet Impala, the police searched him and found drugs. The trial court elicited information from the prosecutor that the vehicle was then searched for contraband because the police discovered drugs on defendant's person. Given the suspicion concerning defendant's participation in the recent shooting, and the fact that he was in possession of illegal drugs at the time of his arrest for the shooting, there was a substantial basis for inferring a fair probability that contraband related to either the possession of drugs or drug trafficking was in the car. See *People v Martinez*, 187 Mich App 160, 170-171; 466 NW2d 380 (1991) (presence of both a gun and a large amount of currency established probable cause to believe that other evidence or contraband could be found elsewhere in a vehicle). The totality of the circumstances justified the search of defendant's vehicle without a warrant. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Wyoming v Houghton*, 526 US 295, 301; 119 S Ct 1297; 143 L Ed 2d 408 (1999) (quotation marks and citation omitted).

Defendant argues that the search was illegal under *Arizona v Gant*, 556 US 332, 338-347; 129 S Ct 1710; 173 L Ed 2d 485 (2009), in which the United States Supreme Court held that the arrest of a motorist does not justify a warrantless search of the motorist's vehicle incident to the arrest where there is no possibility of the defendant accessing the vehicle and no reasonable suspicion that the vehicle contains evidence related to the arresting offense. *Gant* involved a search incident to arrest and is, therefore, distinguishable from the instant case, which involved a search falling within the scope of the automobile exception. *Id*. at 335, 351. In *Gant*, the United States Supreme Court expressly distinguished those two types of searches, explaining that searches pursuant to the automobile exception are broader and not limited to circumstances in which the police reasonably believe that the defendant might gain access to the vehicle or that the vehicle contains evidence related to the arrest. *Id*. at 346-347.

-9-

For all of these reasons, defendant cannot establish plain error affecting his substantial rights.[2] See *Carines*, 460 Mich at 763-764.

## V. PROSECUTOR'S CONDUCT

Next, defendant argues that the prosecutor committed misconduct by failing to correct Trooper Girke's testimony in response to a question from the jury. We disagree.

### A. STANDARD OF REVIEW

Defendant failed to preserve his claim of prosecutorial misconduct by "contemporaneously object[ing] and request[ing] a curative instruction," *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010), or otherwise raising the issue at trial, *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). Thus, review is limited to plain error affecting defendant's substantial rights. *Bennett*, 290 Mich App at 475-476, citing *Carines*, 460 Mich at 763.

### B. ANALYSIS

A "prosecutor may not knowingly use false testimony to obtain a conviction, and . . . a prosecutor has a duty to correct false evidence." *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001) (quotation marks and citation omitted). In *People v Gratsch*, 299 Mich App 604, 619-620; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013), this Court stated:

> A defendant's right to due process guaranteed by the Fourteenth Amendment is violated when there is any reasonable likelihood that a conviction was obtained by the knowing use of perjured testimony. Accordingly, a prosecutor has an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility. When a conviction is obtained through the knowing use of perjured testimony, a new trial is required only if the tainted evidence is material to the defendant's guilt or punishment. So whether a new trial is warranted depends on the effect the misconduct had on the trial. The entire focus of [the] analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability. [Quotation marks and citations omitted.]

---

[2] There was testimony that defendant's car was impounded after his arrest. Although the record lacks detail regarding the circumstances surrounding the impoundment, it appears that, even if the search of defendant's trunk at Physician's Park could be considered unconstitutional, the gun would have been inevitably discovered during a lawful inventory search. Notably, defendant does not contest the procedures followed by the police officers during the impoundment. Accordingly, on this alternative ground, the admission of the gun at trial did not violate defendant's constitutional rights. See *People v Toohey*, 438 Mich 265, 271-272, 283-286, 290-291; 475 NW2d 16 (1991); *People v Hyde*, 285 Mich App 428, 439; 775 NW2d 833 (2009).

See also *People v Smith*, 498 Mich 466, 475-477; 870 NW2d 299 (2015) (discussing in detail the principles applicable to situations where a prosecutor allows false testimony from a prosecution witnesses to stand uncorrected).

At trial, the trial court engaged in the following examination of Trooper Girke in response to a question submitted by a juror:

> *The Court*: I think this question is did the weapon match the cases that were found at the parking lot of the store. Do you have any knowledge about that?
>
> [*Trooper Girke*]: I do.
>
> *The Court*: What is your knowledge?
>
> [*Trooper Girke*]: From the lab report the gun was sent to the lab for what they call open shootings. A lab report came back that the bullet that was taken from the victim was fired from this gun.

The parties do not dispute that Trooper Girke's testimony was inconsistent with (1) the report that he referenced and (2) the testimony of Grel Rousseau, the firearms and tool marks examiner, who testified that he could not conclusively determine that the *bullet* recovered from the victim was fired from that gun, even though he determined that the *recovered cartridge cases* were fired from the gun. However, as the prosecution notes on appeal, the prosecutor did not call Trooper Girke to testify about the ballistics analysis of the gun, casings, or bullet. Rather, the prosecutor elicited testimony from Girke about his role in the investigation of "Rio," defendant's arrest, and the search of defendant, his vehicle, and his home. A juror—not the prosecutor or defense counsel—asked whether the cartridge cases matched the gun. Trooper Girke cited the lab report and testified that the bullet matched the gun. The prosecutor did not object to Trooper Girke's testimony, but the prosecutor's failure to object did not amount to misconduct because she did not elicit the testimony or rely on it to support her case. See *Herndon*, 246 Mich App at 417.

Furthermore, the prosecutor satisfied her obligation to correct false testimony by subsequently introducing into evidence the lab report stating that the cartridge cases matched the gun, but the bullet testing was inconclusive. See *id*. In addition, the prosecutor called firearms and tool marks expert Rousseau to testify about the lab report. Rousseau explained that the bullet, cartridge cases, and gun all had the same class characteristics, but he only could conclude that the cartridge cases were fired from the gun. He clearly testified that the results of the comparison between the bullet and the gun were inconclusive. During her closing argument, the prosecutor only argued that the cartridge cases matched the gun. The record clearly shows that the prosecutor did not knowingly allow false testimony to stand uncorrected. Compare *Smith*, 498 Mich at 478-482.

Therefore, defendant cannot establish that the prosecutor's conduct in relation to Trooper Girke's testimony constituted plain error affecting his substantial rights, or seriously affected the fairness, integrity, or public reputation of judicial proceedings. See *Carines*, 460 Mich at 763.

## VI. IDENTIFICATION

Lastly, defendant challenges Gay's identification of him in the second photographic array. We reject defendant's clams.

### A. STANDARD OF REVIEW

Because defendant did not object to the identification before or at trial, this issue is unpreserved and reviewed for plain error affecting his substantial rights. *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001).

### B. ANALYSIS

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). To challenge an identification on due process grounds, a defendant must establish "that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Id.*; see also *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998).

In general, a photographic array is not suggestive if "it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *People v Kurylczyk*, 443 Mich 289, 304; 505 NW2d 528 (1993) (quotation marks and citation omitted). "[W]hen 'the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person.' " *Id.*, quoting *People v Anderson*, 389 Mich 155, 178; 205 NW2d 461 (1973), overruled in part on other grounds *People v Hickman*, 470 Mich 602 (2004). But mere "differences in the composition of photographs, in the physical characteristics of the individuals photographed, or in the clothing worn by a defendant and the others pictured in a photographic lineup" do not render a lineup impermissibly suggestive, unless they substantially distinguish the defendant from other lineup participants, thereby leading "to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 304-305, 312 (citations omitted). In general, those types of differences relate only to the weight of the identification, not its admissibility. See *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002).

In *Kurylczyk*, 443 Mich at 304 n 10, the Michigan Supreme Court referenced three cases involving photographic lineups that included differences in the composition of the photographs, but were not impermissibly suggestive:

> See, e.g., *People v Dean*, 103 Mich App 1; 302 NW2d 317 (1981) (the panel refused to find a photographic identification impermissibly suggestive simply because the defendant's photograph was composed vertically while the five other photographs were composed horizontally); *People v Wilson* (*On Rehearing*), 96 Mich App 792, 799; 293 NW2d 710 (1980) (photographic flaw over the defendant's forehead was not suggestive, in light of the fact that "[a]ll six photographs show evidence of having been handled a great deal"); *People v Thornton*, 62 Mich App 763, 768; 233 NW2d 864 (1975) (the photographic

-12-

display was not suggestive even though six photographs were "full-body length" while the defendant's was a "head and shoulders" shot).

In *Wilson*, this Court explained:

> "Mug shots" are necessarily produced under widely differing circumstances of light and background, using various kinds of equipment. The purposes for which they are produced practically guarantee that they will be handled often. Thus, the presence of flaws and marks on the photographs in a showup array may be expected to be more the rule than the exception. [*Wilson*, 96 Mich App at 799.]

If the trial court finds that the identification procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis can be established for the in-court identification "that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303; see also *People v Kachar*, 400 Mich 78, 92-96; 252 NW2d 807 (1977). The inquiry focuses on the totality of the circumstances. *Gray*, 457 Mich at 115. Courts should consider the following factors when determining whether an independent basis exists for the admission of an in-court identification: (1) the witness's prior knowledge of the defendant, (2) the witness's opportunity to observe the perpetrator during the crime (including the duration of the observation, the lighting, any noise or other factors affecting sensory perception, and the proximity to the alleged criminal act), (3) the length of time between the crime and the disputed identification, (4) discrepancies between the pretrial identification description and the defendant's actual appearance, (5) any prior proper identification or failure to identify the defendant, (6) any prior identification of another individual as the perpetrator, (7) the mental state of the witness at the time of the crime (considering factors such as fatigue, nervous exhaustion, intoxication, and the age and intelligence of the witness), and (8) any special features of the defendant. *Gray*, 457 Mich at 116, quoting *Kachar*, 400 Mich at 95-96. Courts will also consider the witness's level of certainty during the prior identification. See *Kurylczyk*, 443 Mich at 306; *People v Colon*, 233 Mich App 295, 304-305; 591 NW2d 692 (1998).

The photographic array here consists of six color photographs, including a photograph of defendant. The photographs are all the same size and depict the individuals from the same angle (*i.e.*, showing each man's head, neck, and shoulders). The photographs each have a light blue background. Further, with respect to the physical features and clothing of the individuals depicted, there is nothing that substantially distinguishes defendant from the other individuals. The men appear to be of similar ages; all the individuals are African-American; all the men have facial hair, glasses, and short, dark hair; and they are wearing a variety of styles and colors of shirts. There is no indication in the record that the police said or did anything while Gay viewed the photographic array that rendered the identification procedure unduly suggestive.

Defendant argues that the array was impermissibly suggestive because the background in his picture differs from the background in the other subjects' pictures. Defendant's claim is not supported by the record. With his brief on appeal, defendant submitted a poorly reproduced black-and-white photocopy of the photographic array. In that reproduction, the background of defendant's photo appears significantly whiter than the backgrounds of the other photos, which are various shades of gray. However, with its brief on appeal, the prosecution submitted a

scanned, color version of the photographic array, which was the version that Gay actually used to identify defendant during the investigation. Contrary to defendant's claim, the scanned copy clearly shows that the background of each photograph is blue, and the shade of blue varies only slightly in each photograph. As in *Wilson*, where the photographic lineup was not impermissibly suggestive, despite the fact that the photo of the defendant had a flaw on his forehead, because each photo had flaws and showed evidence of extensive handling, the array in this case was not impermissibly suggestive based on the slight differences in the background colors. See *Wilson*, 96 Mich App at 799 (cited in *Kurylczyk*, 443 Mich at 304 n 10). As the Court explained in *Wilson*, minor differences are expected, as mug shots are taken under different lighting and background conditions. *Wilson*, 96 Mich App at 799.

Defendant also claims that most of the other individuals pictured were "significantly heavier" than him. The record does not support defendant's claim. The shape and size of defendant's face and shoulders are substantially similar to the faces and shoulders of the other lineup participants. See *Kurylczyk*, 443 Mich at 304-305, 312. As the prosecution emphasizes, variations in the camera angle or camera distance appear to have resulted in negligible differences between the photographs. Each photograph shows the individual's shoulders and face, and even an array including full body shots as well as head and shoulder shots is not necessarily unduly suggestive. See *Thornton*, 62 Mich App at 768. Again, a photographic array is not impermissibly suggestive if "it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *Kurylczyk*, 443 Mich at 304 (quotation marks and citation omitted). The record includes no basis for concluding that the photographic lineup was impermissibly suggestive in this case. *Id*. at 304-305, 312.

Furthermore, even if we assume, arguendo, that the lineup was impermissibility suggestive, a majority of the *Kachar* factors previously mentioned weigh in favor of finding an independent basis for the in-court identification. See *Gray*, 457 Mich at 116, quoting *Kachar*, 400 Mich at 95-96; *Kurylczyk*, 443 Mich at 306. Defendant focuses on Gay's testimony that he did not know defendant and did not know his name at the time of the shooting. However, Gay also testified that he had seen defendant twice before in the neighborhood. During the incident, Gay only observed defendant's body between his shoulders and forehead because defendant was sitting in his vehicle, and Gay was focused on the gun. However, Gay had time to recognize defendant's features as he drove toward the liquor store and through the parking lot. Gay also heard defendant say, "Give it up," as he pointed the gun toward Gay. The crime occurred on October 3, 2014, and Gay identified defendant in the photographic array shortly afterward on October 27, 2014. The testimony confirms that Gay identified defendant in the array quickly and with certainty. Defendant does not identify any discrepancies between Gay's pretrial description and defendant's actual appearance. Moreover, the fact that Gay did not identify anyone in the first photographic lineup, which did not include defendant's picture, confirms that Gay was not susceptible to misidentification.

Only two factors weigh against finding an independent basis for the in-court identification. See *Gray*, 457 Mich at 116; *Kurylczyk*, 443 Mich at 306. Gay admitted that, immediately after the shooting, he did not report to the officers who shot him. But this factor carries little weight because Gay also explained that his inability to report the shooter resulted from the pain that he was experiencing at the time, so that he "couldn't really think straight." In

addition, defendant's glasses are a special feature of his appearance. Despite this special feature and Gay's initial inability to describe defendant, a clear majority of the factors indicates that Gay had an independent basis for the in-court identification. Thus, defendant cannot establish plain error affecting his substantial rights. See *Carines*, 460 Mich at 763-764.

Defendant argues that defense counsel provided ineffective assistance when she failed to move to suppress the identifications. As discussed, defendant has not established a plain error affecting his substantial rights with regard to the photographic array or the in-court identification. Therefore, any objection or motion on this basis would have been futile. Again, defense counsel is not ineffective for failing to raise a futile objection or make a meritless motion. *Thomas*, 260 Mich App at 457.

## VII.  CONCLUSION

Defendant has failed to establish that any of his claims warrant relief.

Affirmed.

/s/ Michael J. Riordan
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle

-15-